Hursh v. The First Division of the St. Paul & Pacific Railroad Co.

JACOB HURSH

*vs.*

THE FIRST DIVISION OF THE ST. PAUL & PACIFIC RAILROAD CO.

The provision in defendant's charter, that the value of lands entered upon and taken for its purposes, shall be appraised at the time it was so entered upon and taken, contemplates an entry which will involve and require the taking and keeping by the company of the possession and occupation thereof, or if, in any case, not the permanent actual occupation, the use, to the exclusion of the owner.

The further provision, that it shall be lawful for the company, after entering upon and taking any land of individuals, to have, hold, possess, occupy, use and enjoy the same for any of its lawful purposes, from the time of such entry and taking and until the proceedings contemplated by the charter, and to be instituted by the company for ascertaining the value thereof, shall have been finally determined, and until such company shall have refused after demand made to pay the value of the land so ascertained; and that they shall not

during such time, nor until such refusal, be disturbed in such possession or occupancy, use or enjoyment, by any proceedings either in law or equity, is void; and the acts of defendant in entering upon and appropriating plaintiff's land to railroad uses on November 1, 1866, and constructing and operating its road thereon against his will and without making or securing compensation therefor, are unlawful; [following Gray vs. First Div. St. P. & P. R. R. Co., 13 Minn. 315;] and this, although the proceedings above mentioned, have since said date been instituted, commissioners appointed, pursuant to said charter, to appraise the value of said land at the time aforesaid of such entry and taking; an award made by them of such appraised value, with interest since said 1st of November, and a tender thereof made by defendant, and whether or not such appraised value of said land so taken would be that just compensation, without which, by the constitution of the United States, private property is not to be taken for public use.

The charter also provides, that whenever the commissioners should make an award of such value, and no appeal should have been taken therefrom within the time limited therefor, or whenever, in case of appeal, a final judgment should be rendered, it should be the duty of the company, and not before, to pay the amount of such award or judgment; and that on payment or tender an absolute estate in fee simple in said land shall become vested in said company. It was *held*, that when plaintiff, in 1870, brought this action against defendant, to recover damages for its unlawful acts aforesaid, and for an injunction to restrain the continuing of its railroad on his land, and the interfering with his possession thereof, and the answer alleged, among other things, that defendant had lawfully so entered thereon for railroad purposes, and constructed and operated its railroad thereon, and had procured the appointment of said commissioners, who were proceeding with all convenient speed to make an appraisal and award of the value of said lands in the manner specified by law; that a supplemental answer stating that, since answer, the commissioners had appraised the value of said land on said 1st of November, 1866, and had awarded the same to plaintiff with interest since that date; had duly notified him of such award and filed the same; and that the defendant was ready and thereby offered to pay plaintiff the said sum, and brought the same into court for him; states no facts material to the case occurring after the former answer.

This action was commenced in the district court for Hennepin county.

The plaintiff in his complaint alleges that on the first of November, 1866, the defendant wrongfully entered upon plain-

Hursh v. The First Division of the St. Paul & Pacific Railroad Co.

tiff's land, described in the complaint, and took possession of a strip thereof one hundred and sixty rods in length by one hundred and thirty-nine feet in width; that defendant cut down and carried away the trees growing upon the land so taken by it, and constructed upon said land its railroad, which it has since, for more than two years, continued to operate, depriving the plaintiff of the possession, use and enjoyment of said land; that defendant threatens to continue to deprive, and unless restrained therefrom by the court, will deprive plaintiff of the use and enjoyment of said land, and will occupy the same for its railroad forever; that plaintiff has been damaged to the several amounts mentioned in the complaint by reason of the removal of said trees, the construction of the railroad upon the land, and the continued occupation and use of the land for such railroad. The plaintiff thereupon asks judgment for the amount of the damages sustained by him, and for an injunction.

The allegations of the answer, so far as material on this appeal, are the incorporation of the defendant and its power to take private property, under certain acts of the legislature; the location by defendant of the route of its railroad through the counties of Hennepin and Wright, and over the strip of land described in the complaint; the lawful taking by it of the said strip for railroad purposes; the due commencement of proceedings to condemn the lands along its said route, entered upon and used for its railroad; the due appointment of commissioners, "who are proceeding with all due and convenient speed in the manner specified by law to make an appraisal and award of the value of the lands so entered upon, occupied and used, including the strip of land described in the complaint, but that such appraisal and award has not yet been made by the commissioners."

VOL. XVII.—55

The summons and complaint were served April 2nd, 1870, and the answer was served April 21st, 1870.

On the 6th of May, 1870, the defendant moved for leave to serve a supplemental answer, alleging that, since the service of the answer, and on the 2d of May, 1870, the commissioners having first given due notice to plaintiff as prescribed by law, examined the land described in the complaint, and, after such examination, the commissioners on the same day appraised the value of said land at the time it was entered upon by the defendant, to-wit : the first of November, 1866, with the trees standing thereon, at the sum of $130, and awarded to plaintiff the said sum with interest thereon from November 1st, 1866, amounting at the date of the award to $161.90 ; that the commissioners on the 3d of May, 1870, duly filed their award and delivered a copy thereof to the defendant; that defendant is ready to pay plaintiff the said award, and brings into court the amount thereof with interest from the date of the same, and also offers to pay plaintiff costs of this action, to be taxed.

The motion was denied, and the defendant appeals from the order denying such motion.

BIGELOW & CLARK, for Appellant.

LOCHREN & McNAIR, for Respondent.

*By the Court.*—RIPLEY, CH. J.—The motion for leave to file the supplemental answer was rightly denied.

By sec. 3 of the defendant's charter, (*Laws of* 1857, *Extra Session, p.* 3,) it may enter upon lands for the purpose of making surveys, and for the right of way, and may appropriate to its sole use and control for its purposes as a railroad, land not exceeding two hundred feet in width throughout its line, and enter upon, and take possession of and use any lands

beyond that width for depot, stations, station grounds and houses, and various other purposes specified and necessarily incident to the complete construction, operation and preservation of the road; and lands belonging to individuals may be taken and appropriated for the purposes aforesaid, and ·shall be valued and paid for as thereinafter provided.

At this point, and in the outset, and on the most cursory examination of this section, it is obvious that, whatever be the precise meaning of the words, "and for the right of way," it is not the right to enter on any lands whatever therefor, and to make surveys, which is to be valued and paid for; but the land of individuals or corporations, which, by the succeeding clauses, is to be taken and appropriated to the defendant's use, to the width of two hundred feet throughout its line, and in some localities to a greater width.

By sec. 13 it is provided that, whenever the line of the road * * * * * shall be located and its route determined, it may apply for the appointment of commissioners "to appraise and award the value of all lands belonging to any private person on its line, which it shall have entered upon, possessed, occupied or used, or which it may thereafter enter upon, take, possess, occupy or use for any of the purposes for which, by this act, the said company is authorized to enter upon, take, possess, occupy or use lands."

No particular land need be designated in the application, nor need the corporation have determined what particular land it will appropriate, either within the two hundred feet or beyond it. All that is required, is, that it shall have located its line and determined its route. *Wilkin vs. First Div. St. Paul & P. R. R. Co.*, 16 *Minn.* 271.

The commissioners are to have cognizance of all cases arising on the line of the road, or on so much thereof. as shall be designated, and in each case shall examine the premises sepa-

rately, and shall separately make an appraisement and award of the value thereof at the time when it was so entered upon and taken. On award made and no appeal taken, or on final judgment rendered on appeal, *and not before,* it is the duty of the company to pay to the land owner the amount so awarded or adjudged; and on payment or tender an absolute estate in fee simple in such lands shall become vested in the company, and the said company shall have full power and authority, after entering upon and taking any such lands, to have, hold, possess, occupy, use and enjoy the same for any of the lawful purposes of said company, from the time of such entry and taking until the proceedings contemplated by the act shall have been finally determined, and until the said company shall have refused, after demand made, to pay the value of said land, so ascertained as aforesaid; and shall not, during such time nor until such refusal, be disturbed in such possession or occupancy, use or enjoyment, by any proceedings either in law or equity.

The value of the land is to be appraised at the time it was entered upon and taken, and the first question to be considered, is, as to what this means. The supplemental answer alleges that the commissioners have awarded the value of the land as it was November 1, 1866, with interest since, to the date of the award. On said 1st November, it alleges that it was entered upon for railroad purposes. This, in strictness of pleading, must be taken to be an allegation, that it was then *first* entered on for such purposes. Is this synonymous with the entry and taking, at which the value is to be appraised? Clearly it cannot be. An entry for survey and location of the line would assuredly be an entry for railroad purposes, yet, as we have seen, such an entry would not be a taking of land to be valued and paid for.

This consideration, of itself, disposes of the case; for an

award of the value of the land at a time when it had not been *taken* as it would be unauthorized, would be wholly irrelevant.

Nor, on this construction of the supplemental answer, would it be necessary for us to determine *when* the land is to be deemed to be *entered upon and taken.* It is enough that a time subsequent to an entry thereon for survey and location is plainly intended by the act.

It may be said, however, that taking the answer and supplemental answer together, it is fairly to be intended, that the entry upon the strip of land one hundred and thirty-nine feet wide, described in the complaint and answer, for railroad purposes, and which is the same entry referred to in the supplemental answer, is a different and subsequent entry from any entry that it would be requisite to make on the northerly part of plaintiff's land for the survey, location and marking of the line of the road on the ground described in the answer.

If this construction be admitted, such entry for railroad purposes must be deemed to have been for the purpose of further prosecuting the contemplated enterprise of constructing and operating a railroad upon the line already marked out, —and the question recurs, whether an allegation of an entry on said strip for such purposes be tantamount to an allegagation, that said strip was *entered upon and taken.* In Carli vs. Stillwater & St. Paul R. R. Co., 16 *Minn.* 260, it is held that the land is not taken till award made. But that case arose under the general railroad act, by which the commissioners are to examine the lands that will be taken, and shall appraise to the owner of the land proposed to be taken, the damages arising from such taking. *Gen. Stat. ch.* 34, *sec.* 19. Under *this* charter they are to appraise the value of land, which the company shall have entered upon, possessed, occupied, or used, or which it may thereafter enter upon, take, possess, occupy or use; and shall award the value of the land so entered upon,

taken, possessed, occupied or used, at the time when it was so entered upon and taken, and on appeal, the court shall assess the value of the lands so entered upon, taken, possessed, occupied and used, at the time when the same was entered upon and taken. It is herein plainly implied, that the taking may be prior to the award, for it is evident, for instance, that, in the clause specifying the object of the appointment of the commissioners, the words, "entered upon, possessed, occupied or used," and "may thereafter enter upon, take, possess, occupy or use," are employed to designate the same class of acts, viz. : acts which will amount to an *appropriation* to the use of the company of the private property in question, and in consequence of which appropriation it is to be paid for ;—and any or all of such acts may have taken place prior to the award.

Further, when they are directed to appraise the value of land so entered upon, taken, possessed, occupied or used, at the time it was entered upon and taken, we think it evident that "entered upon and taken," referring, as it does directly, to "entered upon, taken, possessed, occupied or used," means *just that*; that is to say, to constitute an entry and taking, which will amount to such appropriation, the land must be entered on for the purpose of construction of a railroad thereon, by an entry which will involve and require the taking and keeping by the company of the possession and occupation thereof ; or if, in any case, not of the permanent, actual possession, yet of the use therof to the exclusion of the owner. An instance of the latter might be a gravel bank, of which the company might not require to be in the actual, constant possession and occupancy, yet might require the use of the whole, to be removed as wanted, in which case, if it were measured and staked out by the company, the entry thereon therefor might well be held to be, an entry and taking under the charter provision in question.

So, a strip of land, required for a road-bed, might well be deemed to be taken, when it was staked out or cross-sectioned. Entering thereon for such a purpose would involve, in carrying out the work, an exclusive possession, and might well be deemed an appropriation thereof to the sole use of the company.

And as any succeeding step in the prosecution of the enterprise, subsequent to the location and *to be taken on the land,* might, and perhaps we may say would, naturally be an entry for purposes and uses of this exclusive character, amounting to an actual beginning of the work of construction, and an assertion of ownership, (*Sedgwick Const. Law, p. 526,*) we may concede, with some straining, it must be confessed, of language and of the rules of construction, that the words, " entered upon for railroad purposes," in the supplemental answer may be held equivalent to " entered upon and taken," as used in the charter, and that the commissioners, in valuing the land as of November 1st, 1866, would be acting in pursuance of the authority given them by it.

Supposing, however, that this is so, it is still evident that, if the provisions of the charter, that the company shall have full power and authority, after such entry and taking, to retain possession till the final determination of the proceedings, and until, after demand made, it shall have refused to pay the value of the land so ascertained, be legal so that its entry aforesaid and possession since have been rightful, it is utterly immaterial whether any tender or award has been made, or any commissioners appointed to make any award.

If such entry and possession were lawful in the outset, then, in as much as the institution of proceedings for the appointment of commissioners is left to the company, the fact that none have been appointed renders such possession no less lawful in 1869, than it was in 1866.

Is not such lawful possession since November 1, 1866, a complete defence to this action, which is in the nature of an action of trespass ? If it be, is not such defence made out by the allegations in the original answer that the defendant entered on said strip for railroad purposes, as by law it was authorized to do, and necessarily did the acts complained of in fitting it to be used for such purposes, and in constructing and operating their road thereon ? If so, are not the facts alleged in the supplemental answer entirely immaterial under these pleadings ? It would seem so, certainly.

But it has been heretofore decided by this court, that, these provisions of defendant's charter to the contrary notwithstanding, it had no right, without making or securing compensation therefor, to take and use private property in this way. *Gray vs. First Div. St. Paul & P. R. R. Co.*, 13 *Minn.* 315. That is to say, the said provisions of the defendant's charter, in so far as they purport to authorize such use, are unconstitutional and void.

The acts of defendant done on plaintiff's land since November 1st, 1866, being without authority of law, have therefore been a continuing trespass. So considered, it is obvious that this award and tender would be no defence to this action, brought to recover damages therefor. The defendant's position in this respect is, that the award covers all the items of damage that could be claimed in an action of trespass, and also all the damage sustained by the entire farm or tract out of which the land is taken, and also the value of the land taken.

But this is certainly not true, if the charter provides for an appraisement of the value *of the land taken, and for nothing more,* according to its literal meaning. (*Sec* 13.) The value of the strip taken, by itself, is of course no measure, in the nature of things, of the injury which plaintiff may have

sustained, in respect of the property of which it formed an integral part, by reason of such entry and use. *Winona & St. Peter R. R. vs. Denman*, 10 *Minn.* 267. Moreover, it is an obvious deduction from the doctrine of that case, that nothing short of compensation will satisfy the requirements of the constitution of the United States, that private property shall not be taken for public use without just compensation, and that the mere value of the strip taken cannot be that compensation, that this clause of the charter, if it means that defendant may acquire the land by paying its value and nothing more, is altogether illegal, and an award under it could be no defence. 1 *Redf. Railways, ch.* XI, *sec.* 2, *p.* 64.

But it may be said, that it will not do to overlook that wider meaning of the word " value," which may be contended for. If, instead of its literal signification, it should be held rather to mean the value of the strip taken to the owner, that is, to any person owning the same under the same circumstances as the present owner, it is obvious that other elements than its value, by itself or by the acre, would enter into the appraisal, going, with such value, to make up that *compensation*, to which the owner is entitled. Its value *to him* might, for instance, consist in part in connecting the residue of the tract, out of which it is taken, and by reason of which taking the tract becomes no longer one, but two separate tracts, and this might be an element of value, contemplated by the charter.

If this be the correct construction of the word, an appraisal of the value, so understood, of the land on November 1, 1866, might, if *then* paid or secured, have amounted to *compensation*, in the constitutional sense, for the taking at that date. But how can an award thereof, made in 1870, be, in any sense, a defence to this action, which is brought to recover damages for the unauthorized use of plaintiff's property since November 1, 1866 ?

But it may be said that the commissioners have awarded interest on the value so estimated, and that this covers such damages. But the charter makes no provision for their including interest in their award. An estate in fee in the land taken is to vest in the company upon payment or tender of the *value* of the land taken.

The commissioners have apparently, without authority, undertaken to award such interest as compensation for an unauthorized continuing trespass on plaintiff's land since November 1st, 1866. The sum *may* be sufficient, but they have no more right to fix its amount, than defendant itself.

Whatever view, therefore, be taken of the rights and liabilities of defendant, the facts pleaded in the supplemental answer are wholly irrelevant to the issue.

These observations apply to the injunction prayed for. If defendant may lawfully retain possession till the final conclusion of these proceedings, and its refusal to pay, on demand what is awarded, or, if an appeal be taken, what may be finally assessed on appeal, no injunction can issue, whether an award has been made or not. If, on the other hand, the provisions of its charter, purporting to give it that right, are ineffectual to that end, and it has no right to take and use plaintiff's land until it has made or secured just compensation therefor, it is evident that the mere fact, that an award has been made and that defendant is ready to pay the sum awarded, is no more material, to prevent an injunction, than the fact, that commissioners had been appointed to make one, which, and their speedy procedure in the business of their appointment, appear by the original answer. For, if the *value* of the land, appraised by the commissioners or assessed by a jury, be *compensation* for the private property so taken, so that, upon payment, the land might become defendant's property, and its possession consequently lawful, it can in no event become so

The County Commissioners of Ramsey County ex rel. v. Brisbin et al.

by a tender of the sum awarded by the commissioners before the time for appeal expired. Plaintiff could not, in any conceivable case, be divested of his property by a tender of that sum sooner made; and it appears that the award was made May 3d, and the motion for leave to file this supplemental answer May 9th, 1870. On the other hand, if the *value* of the land as appraised is not such compensation, an award and tender thereof, could never give defendant any right in the premises, whether an appeal had been taken and determined or not.

Order appealed from affirmed.