DAVID C. BELL v. ABBY G. MENDENHALL and Others.

November 15, 1899.

Nos. 11,752—(56).

## "Indebtedness."

"Indebtedness" is a word of large meaning, and is used to denote almost every kind of pecuniary obligation originating in contract. The word *held* to cover the debtor's joint as well as several liabilities, and also his liabilities contracted by indorsement, whether then due or to become due.

## Payment of "Outstanding Indebtedness."

Where a contract provided for the payment by one of the parties of "all of the outstanding indebtedness" of the other parties, two in number, "not to exceed in the aggregate the sum of $130,000," the contract must speak for itself as to what debts are to be paid. A party, under the guise of showing what the real consideration was therefor, will not be permitted to cut down or vary his covenant to pay by proof of a parol agreement, antecedent or contemporaneous, that he should pay a part only of all of the indebtedness.

## Payment within Reasonable Time.

The consideration for this promise to pay was, as stated in the contract, that the other parties whose indebtedness was to be paid should execute and deliver to the promisor, a trust company organized under G. S. 1894, § 2849 et seq., deeds of conveyance of certain specified real property, whereupon the $130,000 should be paid "within reasonable time thereafter, or as soon as under the circumstances shall be required." The court found as facts that the deeds in question were executed and delivered "during the year 1893," and that the trust company took possession of the property "after May 1, 1893." *Held*, under these findings, that no obligation to pay debts arose until the year 1893 expired (that is, not before January 1, 1894), and that the company could not be compelled to pay an amount, as interest or otherwise, in excess of $130,000, as of the date last mentioned.

## Total Debt—Interest.

January 1, 1894, the indebtedness exceeded the sum of $130,000. *Held* that, for the purpose of ascertaining what percentage of his claim each creditor should be paid, interest upon interest-bearing claims should be computed to that day, and the amounts added to the principal sums due, or thereafter to mature.

### Interest on Payments.

> The contract provided that the trust company should receive interest upon all payments made by it at the rate of 7 per cent. *Held* that, as between the company and the creditors, the rate of interest to be paid by the former on the percentage is 7 per cent.

### Interest on Balance Due.

> Where there is an open, running, and unliquidated account, with items of debit and credit, the debtor's agreement to pay interest on a balance due from the time of the last item on the debit side is implied.

Action in the district court for Hennepin county by plaintiff as receiver of City Bank against Abby G. Mendenhall, R. J. Mendenhall, and the Minneapolis Trust Company. Plaintiff's cause of action was predicated on a judgment for $4,021.90 against the Mendenhalls, and upon a trust agreement between the Trust Company and the Mendenhalls, in pursuance of which they had conveyed to it practically all their property and whereby the Trust Company agreed to pay their outstanding indebtedness. The allegations of the complaint are set forth in the opinion of the supreme court reported in 71 Minn. 331. The complaint prayed that all parties who desired to participate in the trust fund be required to appear and present their claims, that plaintiff have judgment against the Trust Company for the amount of his claim, and that if the fund proved insufficient plaintiff be allowed to share it with other creditors. In response to an order citing in the other creditors, Crane Company and Albert S. Webb, among others, appeared and filed complaints in intervention. The case was tried before McGee, J., who made findings of fact and conclusions of law, and ordered judgment in favor of plaintiff and other creditors for a certain percentage of their claims; and from a judgment entered pursuant to the order, defendant Trust Company appealed. Modified.

*W. E. Dodge* and *C. S. Albert*, for appellant.

Extrinsic evidence was admissible to show the atmosphere surrounding the inception of the contract, to limit and define the consideration, and to explain the meaning of the words "outstanding indebtedness," which embrace the consideration and are susceptible of different interpretations. The case involves no element of estop-

pel. The liability of the Trust Company arose from an original and independent promise, and it became the principal debtor. Guderian v. Leland, 61 Minn. 67, 71. Extrinsic evidence is always admissible to show the real consideration, purpose and subject-matter of a contract. Baldwin v. Winslow, 2 Minn. 174 (213); Case v. Young, 3 Minn. 140 (209); Ames v. First Div. St. P. & P. R. Co., 12 Minn. 295 (412); Donnelly v. Simonton, 13 Minn. 278 (301); Kelly v. Bronson, 26 Minn. 359; Harrington v. Samples, 36 Minn. 200; King v. Merriman, 38 Minn. 47; Sayre v. Burdick, 47 Minn. 367; Rugland v. Thompson, 48 Minn. 539; Beyerstedt v. Winona Mill Co., 49 Minn. 1; Ham v. Johnson, 51 Minn. 105, 107; Staples v. Edwards & McCulloch L. Co., 56 Minn. 16; Longfellow v. McGregor, 56 Minn. 312; Engel v. Scott & Holston L. Co., 60 Minn. 39; Pfeifer v. National Live S. Ins. Co., 62 Minn. 536; Board of Trustees of Ripon College v. Brown, 66 Minn. 179; Waldheim v. Miller, 97 Wis. 300; Swedish-American Nat. Bank v. Germania Bank, 76 Minn. 409; Reed v. Insurance Co., 95 U. S. 23; Peugh v. Davis, 96 U. S. 332, 336; Chicago v. Sheldon, 9 Wall. 50; Thomas v. Railroad Co., 101 U. S. 71, 86; Topliff v. Topliff, 122 U. S. 121; Lowry v. Adams, 22 Vt. 160; Noyes v. Canfield, 27 Vt. 79; Winn v. Chamberlin, 32 Vt. 318; Redfield v. Gleason, 61 Vt. 220; Herring v. Boston, 1 Gray, 134, 138; Sargent v. Adams, 3 Gray, 72, 78; Pike v. Fay, 101 Mass. 134; Swett v. Shumway, 102 Mass. 365; Stoops v. Smith, 100 Mass. 63; Atwater v. Clancy, 107 Mass. 369; Lovejoy v. Lovett, 124 Mass. 270; Agawam v. Strever, 18 N. Y. 502; Filkins v. Whyland, 24 N. Y. 338, 344; Whites v. Myles, 73 N. Y. 335; Juilliard v. Chaffee, 92 N. Y. 529; Burditt v. Hunt, 25 Me. 419; Coquillard v. Hovey, 23 Neb. 622; Hersom v. Henderson, 21 N. H. 224; Vinton v. Baldwin, 95 Ind. 433; Lyles v. Lescher, 108 Ind. 382; Louisville v. Reynolds, 118 Ind. 170; Barrett v. Stow, 15 Ill. 423; Vermont v. Brose, 104 Ill. 206; McNulta v. Corn, 164 Ill. 427, 451; Ganson v. Madigan, 15 Wis. 158; Janesville v. Ford, 82 Wis. 416; Nilson v. Morse, 52 Wis. 240; Hosmer v. McDonald, 80 Wis. 54; Beason v. Kurz, 66 Wis. 448; Quarry v. Clements, 38 Oh. St. 587; Patterson v. Camden, 25 Mo. 13; St. Louis v. City, 46 Mo. 121; Tufts v. Greenewald, 66 Miss. 360; Giddings v. Day, 84 Tex. 605; Kingston v. Pickins, 46 Tex. 99, 101; Wilson v. Smith, 50 Tex. 365, 369; D'Aquin v. Barbour, 4 La. An.

441; Wendlinger v. Smith, 75 Va. 309; Peisch v. Dickson, 1 Mason, 9, 11; Browne, Par. Ev. 118; Colpoys v. Colpoys, Jacob, 451; Greenleaf, Ev. (13th Ed.) § 298; Knight v. New England, 2 Cush. 271, 283; Bainbridge v. Wade (1850) 20 L. J. Q. B. 7; Roots v. Snelling, 48 L. T. (N. S.) 216; Barry v. Bennett, 7 Metc. (Mass.) 354.

The contract as interpreted by plaintiff was ultra vires. Field, Ultra Vires, 57-59; Trustees of Dartmouth College v. Woodward, 4 Wheat. 518; Hood v. New York, 22 Conn. 1, 502; Franklin v. Lewiston, 68 Me. 43; Bissell v. Michigan, 22 N. Y. 258. A contract of guaranty, not within the express powers of a corporation, is ultra vires and void. Koehler v. Reinheimer, 20 Misc. (N. Y.) 62; Morawetz, Corp. § 423; Tod v. Kentucky Union L. Co., 57 Fed. 47; Davis v. Old Colony, 131 Mass. 258; Madison v. Watertown, 7 Wis. 53; Ætna v. Charter, 50 Conn. 167; Louisville, N. A. & C. R. Co. v. Ohio Valley Imp. & C. Co., 69 Fed. 431; National v. German-American, 116 N. Y. 281, 292; Central v. Empire, 26 Barb. 23; Morford v. Farmers, 26 Barb. 568; Monument v. Globe, 101 Mass. 57; Culver v. Reno, 91 Pa. St. 367; Hall v. Auburn, 27 Cal. 256; Colman v. Eastern, 10 Beav. 1.

The court erred in allowing interest on the claims of Crane Company and Webb. Interest is not chargeable on open accounts which have not been liquidated, and a balance expressly agreed upon. Forgay v. Hamlin, 3 La. An. 697; Clark v. Clark, 46 Conn. 586, 589. Interest is not recoverable on an unliquidated book account till a balance is agreed on and demand made. Broom v. Henman, 1 Root (Conn.) 248; Temple v. Belding, 1 Root (Conn.) 314; Skirving v. Executors, 2 Bay (So. C.) 233. See also Sibley v. County of Pine, 31 Minn. 201; Perine v. Grand Lodge A. O. U. W., 51 Minn. 224; Wood v. Hickok, 2 Wend. 501; Walden v. Sherburne, 15 Johns. 409; Patterson v. Choate, 7 Wend. 441; Reid v. President, 3 Cow. 393; McKnight v. Dunlop, 4 Barb. 36; Doyle v. St. James, 7 Wend. 178; Beers v. Reynolds, 12 Barb. 288; Tucker v. Ives, 6 Cow. 193; 11 Am. & Eng. Enc. 384; Mason Craig v. Callender, Flint & Co., 2 Minn. 302 (350); Leyde v. Martin, 16 Minn. 24 (38); Cooper & Lavely v. Reaney, 4 Minn. 413 (528).

*Harlan P. Roberts,* for plaintiff respondent.

Though parol evidence may be introduced to show that the real consideration was different from that which appears on the face of the deed or agreement, this rule is subject to the limitation that such evidence is not admissible to defeat or vary the terms of a written contract. Sayre v. Burdick, 47 Minn. 367; Bruns v. Schreiber, 43 Minn. 468; Minneapolis, St. P. & S. Ste. M. Ry. Co. v. Home Ins. Co., 55 Minn. 236; Lawton v. St. Paul Permanent L. Co., 56 Minn. 353. Where a corporation has received the fruits of a contract, it will not be heard to set up the defense of ultra vires, when the other party sues for the price. 28 Am. Law Rev. 376; Field, Ultra Vires, 174, et seq.; State v. Citizens, 47 Ind. 407; Bradley v. Ballard, 55 Ill. 413; DeGroff v. American, 21 N. Y. 124; Palmer v. Lawrence, 3 Sandf. 161, 170; 27 Am. & Eng. Enc. 363; Seymour v. Chicago G. F. L. Soc., 54 Minn. 147; Central B. & L. Assn. v. Lampson, 60 Minn. 422; Erb v. Yoerg, 64 Minn. 463.

*Robert G. Morrison,* for respondents Crane Company and Webb.

The prior agreements were merged in that of May 1, 1893. Van Ness v. Mayor, 4 Pet. 232; Potomac S. Co. v. Upper Potomac S. Co., 109 U. S. 672, 3 L. R. A. 308, note. The written contract must speak exclusively for itself. 2 Parsons, Cont. 680; Wheat v. Hamilton, 53 Ind. 256; Spingarm v. Rosenfeld, 4 Misc. (N. Y.) 523, 525; Doe v. Webster, 4 P. & D. 270, 273; Goodrich v. Longley, 1 Gray, 379; Greenleaf, Ev. § 286, note. The Trust Company was estopped to set up the defense of ultra vires. 5 Thompson, Corp. § 6016; Seymour v. Chicago G. F. L. Soc., 54 Minn. 147, 149. If the contract was ultra vires, it was so only in part, and can therefore be enforced against the Trust Company. 5 Thompson, Corp. § 5975. The contract was, however, within the corporate powers. G. S. 1898, § 2849; Milnor v. Home S. & L. Assn., 64 Minn. 500, 504. Every advancement for accommodation of another, to be repaid by the person receiving the money, is a loan. Freeman v. Brittin, 2 Harr. (N. J.) 191, 206; 13 Am. & Eng. Enc. 977, note.

The contract included payment of the individual debts of R. J. Mendenhall. Duvall v. Craig, 2 Wheat. 45; 2 Brandt, Sur. & Guar. § 309; Kirby v. Turner, Hopkins, Ch. (N. Y.) 309; Tuman v. Pills-

bury, 60 Minn. 520. The accounts of these respondents draw interest. If the amount is capable of being ascertained by mere computation, it will draw interest. McMahon v. New York, 20 N. Y. 463, 469; Graham v. Chrystal, 1 Abb. Pr. (N. S.) 121, 124; Peetsch v. Quinn, 7 Misc. (N. Y.) 6, 7. Respondents' accounts are, however, liquidated and certain in amount, and interest should be allowed. 2 Sutherland, Dam. § 617; 11 Am. '& Eng. Enc. 386. An account of items on one side of goods sold and on the other of payments made is not a mutual, open, current account. Cousins v. St. Paul, M. & M. Ry. Co., 43 Minn. 219; 16 Am. & Eng. Enc. 6; 1 Abbott, Law Dict. 11. See 2 Sutherland, Dam. §§ 610, 615, 616; 1 Sedgwick, Dam. § 308; Young v. Dickey, 63 Ind. 31; Rend v. Boord, 75 Ind. 307; Sibley v. County of Pine, 31 Minn. 201; County of Redwood v. Winona & St. P. L. Co., 40 Minn. 512, 522. A promise to pay the debt of another, no time being specified, is a promise to pay forthwith if due, and damages are the debt and interest. Furnas v. Durgin, 119 Mass. 500; Perley, Int. 97. No time for payment was specified, and hence payment was to be on delivery, and interest runs from that time. Horn v. Hansen, 56 Minn. 43, 47; Fishback v. G. W. Van Dusen & Co., 33 Minn. 111, 116; Security Bank of Minnesota v. Luttgen, 29 Minn. 128; Iselin v. Simon, 62 Minn. 128.

COLLINS, J.

A general demurrer to the original complaint in this action was overruled in the district court, and on appeal the order was affirmed. 71 Minn. 331, 73 N. W. 1086. Subsequently plaintiff amended his complaint so as to bring in all creditors whose claims had not been allowed, that their rights might be equitably adjusted. A trial was had, and the court made findings of fact, with conclusions of law; judgment being ordered in favor of plaintiff and the respondents Webb and the Crane Company, and also in favor of other creditors, for a certain percentage of the amount of each of their claims. This appeal is from the judgment thereafter entered.

There are two points argued by counsel for appellant trust company which are common to all of the respondents, and which should be first disposed of:

1. The trial court excluded and rejected certain written and oral

testimony which was offered by the trust company for the avowed purpose of explaining the intent of the parties to the trust contract when using the words "outstanding indebtedness" therein, and to show that the claims herein involved were not among those which, up to the limit of $130,000, the trustee had agreed to pay, and that just what debts were within the contract, and to be provided for by it, were well known and agreed upon by the parties at and prior to its execution, May 1, 1893. The rejected written instruments were, with one exception, of an earlier date than the contract, and consisted of letters from Mr. Mendenhall to the officers of the trust company, and an alleged list or schedule of liabilities prepared by him and transmitted pending the negotiations. The claims now in controversy were not in this list. The oral testimony was of conversations between Mr. Mendenhall and the officers, prior to the contract, tending to show that certain debts specified in the list, and none other, were covered by the words "all of the outstanding indebtedness" of the Mendenhalls.

The effect of this class of evidence, if received and relied upon by the court when making its findings, would have been to cut down and limit the liability of the trust company to the debts expressly mentioned in the list or schedule before mentioned as having been submitted by Mr. Mendenhall when he proposed to the company that it become trustee, but in no manner referred to or made a part of the contract, in which it was stipulated that the indebtedness to be taken care of was "all of the outstanding indebtedness of said second parties," not exceeding $130,000. Not the debts or liabilities listed and scheduled at some prior time, and in which list no mention was made of the liability incurred when the Mendenhalls, either prior to the delivery, and for the purpose of giving additional credit thereto, or as indorsers,—and it is not material which,— placed their names on the back of the James note, but all of the outstanding indebtedness. The phrase "all indebtedness" included all pecuniary liabilities of each and both of the debtors, present, or already incurred, but to mature in the future. "Indebtedness" is a word of large meaning, and is used to denote almost every kind of pecuniary obligation originating in contract. It must be held to cover the debtor's joint as well as his several liabilities, and also

his liabilities contracted by indorsement, whether then due or to become due. Merriman v. Social, 12 R. I. 175; Chicago v. Lundstrom 16 Neb. 254, 20 N. W. 198; City v. Gardner, 97 Ind. 1; Scott v. City 34 Iowa, 208.

To give any weight to the evidence in question would be to make a new contract for the parties; for, as was said when the case was here before, the covenant to pay is clearly and concisely expressed, —has no uncertainty in its meaning,—and the promise was for the equal and ratable benefit of all of the creditors. The character of conclusiveness is given to written instruments deliberately adopted by the parties as embodying their final agreements, and as to the terms, conditions, and limitations thereof the written contracts must speak for themselves. Nor will a party, under the guise of showing what the real consideration of a contract was, be permitted to cut down or vary the stipulations of his written covenant by proof of a parol agreement, either antecedent to or contemporaneous with the writing. Bruns v. Schreiber, 43 Minn. 468, 45 N. W. 861; Sayre v. Burdick, 47 Minn. 367, 50 N. W. 245; 2 Parsons, Cont. 680.

The attempt to show that, prior to the execution of the contract in which the trust company agreed to pay all of the indebtedness, it was the verbal understanding that only a part should be paid, was properly excluded by the court below. If the parties desired to limit the liability of the trust company, either by confining such liability to the indebtedness mentioned in the list, or to their joint obligations, it would have been an easy matter to have so written the agreement. This was not done, and, if their actual meaning and intention are not set forth in that instrument, it is an unfortunate omission, for which there is no remedy under the pleadings in this action.

2. It is argued that the contract was ultra vires of the trust company, and for that reason there can be no recovery by either plaintiff or the intervenors. This point was made on the former appeal, but, for reasons stated in the opinion, was not before the court. It was there held that the promise of the company was not collateral or contingent, or one making it a guarantor or surety,

but was an original promise upon a new and independent consideration moving directly from the Mendenhalls to it.

It is possible that counsel are right when contending that such a promise is in excess of the powers of a trust company organized, as this was, under the provisions of G. S. 1894, § 2849, et seq. The question is an open one, for it might be argued with great plausibility that such part of the transaction as required the company to furnish money with which to pay off the indebtedness amounted to nothing more than an agreement to loan money to the debtors, to be paid directly to the creditors. But, whether or not this is true, a determination of the question is not necessary to a disposition of the case. Long before the commencement of this action the Mendenhalls conveyed their property to the trust company, and the latter retains the same, or the proceeds of a sale. It has received, and still holds, the fruits or benefits of the contract. Under such circumstances, it cannot be permitted to repudiate the obligation it assumed, for there are few rules that are better settled, or more strongly supported by authorities, with fewer exceptions, in this country, than that when a contract by a private corporation, which is otherwise not objectionable, has been performed on one side, the party which has received and retained the benefits of such performance shall not be permitted to evade performance on the ground that the contract was in excess of the purpose for which the corporation was created. Seymour v. Chicago G. F. L. Soc., 54 Minn. 147, 149, 55 N. W. 907; 5 Thompson, Corp. §§ 5975, 6016.

3. The contract of date May 1, 1893, provided that, upon the execution and delivery of the deeds of the property, the company should, "within reasonable time thereafter, or as soon as under the circumstances shall be required," in addition to certain other payments and duties, "pay all of the outstanding indebtedness of" said Mendenhalls; "such payments not to exceed in the aggregate the sum of $130,000." According to its clear and unmistakable terms, the trust company was under no obligations to pay in excess of $130,000; and this amount it was not to pay as of the date of the contract, but within a reasonable time, or as soon as, under the circumstances, should be required, after the debtors conveyed their property to it. Any judgment which was based upon payment of

78 M.—5

$130,000 as of May 1, 1893, or which obliged the company to pay more than it had agreed to, in the way of interest or otherwise, was erroneous.

As the debts exceeded $130,000 when the contract was entered into, and interest thereon was accruing, it was necessary, in order to ascertain the percentage to be paid, and to render a proper judgment, for the court to find as a fact at what time the deeds were executed and delivered to the trust company. The only finding on this was that delivery was made "during the year 1893," and it was further found that the company went into possession of the property "after May 1, 1893." There was no finding as to when the "reasonable time" for payment arrived, or when, "under the circumstances," payment should have been required.

With a finding simply that the deeds were delivered "during the year 1893," it is obvious that it must be held that no duty to pay devolved on the company until the year 1893 had expired; that is, not prior to January 1, 1894. The burden of showing the liability on the part of the trust company was upon the creditors in this action, and, taking the most favorable view of the finding for such creditors, no obligation to pay over the sum of $130,000, the maximum limit of liability, arose until January 1, 1894. Interest on the debts prior to that day could not be added to the burden assumed by the company. Such interest, up to January 1, 1894, at the rates stipulated in the evidence of the indebtedness, or at the legal rate if there was no stipulation, in all instances where the debts bore interest, should have been computed, and added to the principal, not for the purpose of compelling the company to pay, in the aggregate, in excess of the amount it had agreed to pay, but simply for the purpose of discovering the basis in percentage on which to distribute the trust fund as of January 1, 1894. All sums which were then determined to be due and payable as a part of this fund would, if interest-bearing obligations as to the Mendenhalls, thereafter bear interest as against the company, at the rate of seven per cent.; that being the rate fixed in the contract to be paid on all sums paid or advanced by such company. Under its contract, the latter cannot be held to pay interest at a greater rate than that fixed for it to receive.

Under the rules herein laid down, the court erred when fixing the percentage amount to be paid plaintiff, and again erred when it fixed the rate of interest at eight per cent. on this amount.

4. The claims of the intervenors, Webb and the Crane Company, consisted of open accounts. That of Webb consisted of items of goods and merchandise sold and delivered to Mr. Mendenhall upon different days between April 10, 1889, and April 28, 1893, with items of credits, cash payments beginning May 1, 1889, and ending June 25, 1896. The court excluded from the account all debit items subsequent to May 1, 1893, and crediting the account remaining with the full amount of the payments, found the balance due to be $230.88, on which interest was allowed at seven per cent. from the date last mentioned. This was error, for interest should have been allowed on the balance from June 25, 1896, only.

The Crane Company account consisted of items of goods and merchandise sold and delivered to Mr. Mendenhall between June 14 and October 12, 1892, with credits of cash paid and goods returned between July 30, 1892, and February 6, 1893; the balance found due being $398.40, on which the court allowed interest at seven per cent. from May 1, 1893. This was error, but the trust company has no cause for complaint. Interest should have been computed on the balance from the date of the last item on the debit side, February 6, 1893, up to January 1, 1894, and on this amount the percentage should have been allowed; the amount so allowed to bear interest at seven per cent. from the day last mentioned. But, had this been done, the sum adjudged to be due the Crane Company would have been more than that found in the judgment. It is probably the law that an account consisting of items of debit and credit is an unliquidated, running account, which will not carry interest, without an agreement express or implied. But, from the time of the last item on the debit side of such an account, it must be regarded as closed, and that there is an implied agreement to pay interest on the balance due thereafter.

No other questions need special consideration. That part of the judgment appealed from and herein held erroneous is set aside, and, on remittitur being filed, the court below will proceed to ascertain and determine the amounts due to plaintiff and the inter-

venor Webb in accordance with the rules herein laid down, for which amounts judgment may be ordered.

MITCHELL, J.

In concurring in the result, I wish merely to say that if the word "indebtedness" admits of more than one construction, according to the subject-matter in contemplation at the time, I think evidence of extrinsic facts would be admissible for the purpose of aiding the court in arriving at the meaning in which the word was used in the written contract; but evidence of antecedent or contemporaneous oral communications between the parties is not admissible for any such purpose. The latter was the character of the evidence offered by the appellant. Moreover, it had no tendency to show in what sense the parties used the word "indebtedness." Its only effect was to prove that, in their antecedent or contemporaneous negotiations, it was agreed that this particular item of indebtedness was to be excluded. I also think that the transaction between appellant and the Mendenhalls amounted, in legal effect, to nothing more than a loan of money by the former to the latter on the security of the property conveyed, and I prefer to dispose of the question of ultra vires on that ground.