FRANK KRAMER v. J. T. GARDNER.[1]

June 5, 1908.

Nos. 15,556—(91).

**Evidence—Consideration.**

Where the statement in a contract as to the consideration is more than a mere acknowledgment of the payment of money, and is of a contractual nature, the general rule permitting the true consideration of written contracts to be inquired into by parol evidence does not apply.

**Same.**

Where the consideration consists of an unambiguous, specific, and direct promise to do certain things, the writing is conclusive, and cannot be varied by extrinsic evidence.

**Outstanding Account.**

The expression "outstanding and open account" has a well-defined meaning in legal and commercial transactions, and does not include bills of exchange, promissory notes, or other written evidences of indebtedness.

**Construction of Agreement.**

In a contract for the sale of a retail stock of goods, the purchaser assumed and agreed to pay the "outstanding and open account" held by a designated creditor against the seller. *Held*, that the agreement did not include an indebtedness arising from promissory notes held by the creditor so named, and, further, that parol evidence was inadmissible to show that the parties intended to include such notes.

**Agreement for Benefit of Stranger.**

A stranger to a contract between others, in which one of the parties promises to do something for his benefit, there being no consideration from him, and no obligation to him from the promisee respecting the subject-matter of the promise, cannot recover thereon. Jefferson v. Asch, 53 Minn. 446, followed and applied. Follansbee v. Johnson, 28 Minn. 311, and similar cases, distinguished.

Action in the district court for Cass county to recover $1,000 upon two promissory notes. Defendant interposed a counterclaim. The case was tried before Spooner, J., and a jury which returned a verdict in favor of plaintiff for $1,312.33. From an order granting a motion

[1] Reported in 116 N. W. 925.

for a new trial, plaintiff appealed. Reversed and remanded for judgment on the verdict.

*Geo. B. Leonard*, for appellant.

*Fred W. Smith*, for respondent.

BROWN, J.

The facts in this case, so far as material to an understanding of the questions decided, are as follows: On and for some time prior to October 16, 1903, one R. F. Whetstone was the owner of a drug store at Cass lake, this state. At about the time stated he sold a one-half interest therein to plaintiff in this action for the consideration of $1,-500. The business was conducted in a rented building, but the furniture and fixtures were owned by Whetstone, and at the time of the sale aforesaid were incumbered by two chattel mortgages theretofore executed by him, one to the Lyman-Eliel Drug Company for $4,200, and one to C. M. Johnson for $1,200. These mortgages covered only the furniture and fixtures. Thereafter, on October 28, 1903, Whetstone sold his entire interest in the business to plaintiff, in consideration of the assumption by the latter of certain outstanding accounts due and owing from Whetstone for goods purchased. The agreement by which plaintiff assumed these accounts was in writing and will be referred to later on in the opinion. Plaintiff then took sole control of the business, stock, and fixtures, and continued in the management thereof until March 3, 1904, when he sold the same to defendant. Defendant paid therefor the sum of $500 in cash, and made and delivered to plaintiff his two promissory notes, each for $500, due at some future time. Defendant having failed to pay the notes when due, plaintiff brought this action to recover thereon. Prior to defendant's purchase of the property, he had become the owner of the Lyman-Eliel Drug Company's mortgage and the indebtedness secured thereby, and he thereafter, and before the commencement of this action, foreclosed the same by sale of the property in due form of law, realizing therefrom $2,675, which he applied in extinguishment of the mortgage debt, leaving a balance due thereon of $820. On the theory that plaintiff assumed and agreed to pay this indebtedness when he purchased the property from Whetstone, and again by the terms of a mortgage executed by him to Johnson in renewal of the Whetstone mort-

gage, defendant interposed this balance as a counterclaim in this action. The claim that plaintiff assumed this particular debt was denied in the reply. The cause was submitted to a jury, and a verdict returned for plaintiff for the full amount due on his notes. The trial court thereafter granted a new trial on the ground that the verdict was not sustained by the evidence, and plaintiff appealed. The question presented by the record is whether defendant's counterclaim is well founded; in other words, whether plaintiff legally obligated himself, either by the terms of the contract by which he purchased the property from Whetstone or by the agreement with Johnson, to pay the Lyman-Eliel Company's mortgage. The question divides itself into three parts, which will be considered separately.

1. The contract by which plaintiff became the sole owner of the property by his purchase from Whetstone was in the following language:

Know all men by these presents that, whereas, R. F. Whetstone has this day surrendered to Frank Kramer the possession of that certain drug business known as the City Pharmacy, and does by these presents relinquish all right, title, and interest therein. Now, therefore, in consideration of such surrender and relinquishment, the said Frank Kramer does hereby assume and agree to pay the outstanding and open account of the Lyman-Eliel Drug Company against the City Pharmacy.

In witness whereof we have hereunto set our hands this 28th day of October, A. D. 1903.

R. F. Whetstone.
Frank Kramer.

It is the contention of defendant that this agreement to pay the "outstanding and open account" of the Lyman-Eliel Company should, in the light of the circumstances surrounding the transaction, be construed to include the mortgage indebtedness held by that company which was represented by promissory notes, and, further, that the contract is ambiguous in this respect, and open, within the rules of law applicable to the subject, to explanation by evidence dehors the writing; while, on the other hand, counsel for plaintiff contends that the writing is wholly free from ambiguity and uncertainty and is its own interpreter. We sustain plaintiff's view of the question.

The expression "outstanding and open account" has a well-defined and well-understood meaning. In legal and commercial transactions it is an unsettled debt arising from items of work and labor, goods sold and delivered, and other open transactions, not reduced to writing and subject to future settlement and adjustment. Taylor v. Parker, 17 Minn. 447 (469); Jones v. Northern Trust Co., 67 Minn. 410, 69 N. W. 1108; Dowdney v. Volkening, 37 N. Y. Super. Ct. 313. The expression "account" indicates an unsettled claim or demand not evidenced by written contract signed by the parties. McCamant v. Batsell, 59 Tex. 363. It is usually disclosed by the account books of the owner of the demand, and does not include express contract obligations which have been reduced to writing, such as bonds, bills of exchange, or promissory notes. Southern v. Gould, 44 Kan. 68, 24 Pac. 352; Burress v. Blair, 61 Mo. 133. In view of this well-known and generally accepted meaning of the language or expression used in this contract, it must be held that on the face thereof plaintiff did not thereby assume or agree to pay the promissory notes held by the Lyman-Eliel Drug Company, which were secured by the mortgage, and upon which defendant's counterclaim is predicated. They formed no part of the "open account" held by that company, and in no proper sense, legal or commercial, did they come within the meaning of "outstanding and open account." McCulsky v. Klosterman, 20 Ore. 108, 25 Pac. 366, 10 L. R. A. 785.

2. Nor is the contract in this particular so ambiguous or uncertain as to permit the introduction of parol evidence to the effect that the mortgage debt was intended to be included therein. The case in this respect comes within Bell v. Mendenhall, 78 Minn. 57, 80 N. W. 843, and Sayre v. Burdick, 47 Minn. 367, 50 N. W. 245. While the true consideration of written contracts may as a general rule be inquired into by evidence outside the writing, the rule is not without well-defined exceptions. It applies more particularly to contracts wherein the consideration is expressed in general terms, as the acknowledgment of the payment of a stated amount of money. In such cases the true consideration may always be shown. Langan v. Iverson, 78 Minn. 299, 80 N. W. 1051; Keith v. Briggs, 32 Minn. 185, 20 N. W. 91; Jensen v. Crosby, 80 Minn. 158, 83 N. W. 43. But where the expressed consideration is more than a stated amount of

money paid or to be paid, and is of a contractual nature, parol evidence is inadmissible to vary, contradict, or add to its terms. The rule is tersely stated in 17 Cyc. 661, as follows: "Where the statement in a written instrument as to the consideration is more than a mere statement of fact or acknowledgment of payment of a money consideration, and is of a contractual nature, as where the consideration consists of a specific and direct promise by one of the parties to do certain things, this part of the contract can no more be changed or modified by parol or extrinsic evidence than any other part."

'The theory upon which parol evidence is admitted to explain or disclose the true consideration is that the statement therein of money paid is a mere acknowledgment or receipt, not having the characteristics of express contract stipulations. But where, as in the case at bar, the consideration is of a specific kind to be paid or executed in a particular way, the reason for the general rule that the consideration may be explained ceases. Express stipulations of this kind should be as free from contradiction or impairment by parol evidence as other stipulations upon other subjects or branches of the agreement. This the authorities fully sustain. Wigmore, Ev. 2433; 17 Cyc. 661; Bell v. Mendenhall, 78 Minn. 57, 80 N. W. 843; Sayre v. Burdick, 47 Minn. 367, 50 N. W. 245; Indianapolis v. Houlihan, 157 Ind. 494, 60 N. E. 943, 54 L. R. A. 787; Reisterer v. Carpenter, 124 Ind. 30, 24 N. E. 371; Trice v. Yeoman, 60 Kan. 742, 57 Pac. 955; Thompson v. Bryant, 75 Miss. 12, 21 South. 655. The contract involved in the case at bar is plain and unambiguous, and within the rule stated can neither be varied nor contradicted by direct evidence nor surrounding circumstances. National Gaslight & Fuel Co. v. Bixby, 48 Minn. 323, 51 N. W. 217. And it is unnecessary to consider, as urged by counsel for defendant, the situation of the parties or the circumstances involved in the transaction between plaintiff and Whetstone. .

3. It is also contended by defendant that plaintiff expressly assumed the Lyman-Eliel Company mortgage debt by a stipulation contained in the mortgage given by him to Johnson, and that the agreement there made inured to the benefit of that company and may be enforced by defendant, its successor in interest. We do not concur in this contention. The facts with reference to this branch of the

case are as follows: As already stated, at the time plaintiff purchased the property from Whetstone there were two existing mortgages upon the fixtures—one to the Lyman-Eliel Company, a first lien, and one to Johnson, a second lien. These mortgages were valid, and to protect plaintiff's property after the purchase he was compelled to pay them, not by reason of any express promise to do so, but solely to relieve the property from the existing encumbrances. To secure more favorable terms in the payment of the Johnson mortgage, plaintiff executed to him a new mortgage upon the property covered by the old, and in and by the terms thereof expressly assumed and agreed to pay the Lyman-Eliel mortgage, which, as already stated, was a first lien. The question presented is whether the Lyman-Eliel Company, or defendant, its successor in interest, can enforce this agreement. There was no contractual or other relation existing between Johnson, to whom the promise to pay was made, and the Lyman-Eliel Company, the beneficiary of the promise, and no consideration moved from that company, either directly or indirectly, to plaintiff, the promisor, nor was Johnson under legal or moral obligation to pay or discharge the debt, unless he voluntarily chose to do so to protect his own security.

The authorities are in irreconcilable conflict on this question. 15 Harvard L. Rev. 767, and cases cited. But it has been firmly and squarely settled in this state adversely to defendant's contention. This court laid down the rule in Follansbee v. Johnson, 28 Minn. 311, 9 N. W. 882, following the general trend of the adjudicated cases elsewhere, that the grantee in a deed of conveyance, by assuming the payment of an outstanding mortgage on the land, for which his grantor is personally liable, legally obligates himself to pay the debt, and his contract may be enforced by the mortgagee. The principle upon which that case is founded is that the promise or agreement to pay the outstanding debt forms a part of the consideration for the purchase of the property and relieves the grantor from a legal obligation to pay the debt himself. That case has been followed in numerous other decisions. Stariha v. Greenwood, 28 Minn. 521, 11 N. W. 76; Maxfield v. Schwartz, 43 Minn. 221, 45 N. W. 429. But we have never extended the rule to a case where the grantor or promisee was, in respect to the particular debt, under no legal or moral obligation to

the third person for whose benefit the promise was made. It was held in Jefferson v. Asch, 53 Minn. 446, 55 N. W. 604, 25 L. R. A. 257, 39 Am. St. 618, that a stranger to a contract between others, in which one of the parties promises to do something for the benefit of such stranger, there being nothing but the promise, no consideration from the stranger, and no duty or obligation to him on the part of the promisee, cannot recover thereon. The same principle was applied in Brown v. Stillman, 43 Minn. 126, 45 N. W. 2; Nelson v. Rogers, 47 Minn. 103, 49 N. W. 526, and again in Union Railway Storage Co. v. McDermott, 53 Minn. 407, 55 N. W. 606.

There is an obvious distinction between these two classes of cases, as a moment's reflection will show. In adopting it this court followed New York and Massachusetts in Lawrence v. Fox, 20 N. Y. 268, and Mellen v. Whipple, 1 Gray, 317. The courts of those states, adhering to well-settled principles of the common law, have declined to extend the doctrine to cases not presenting facts showing a privity of some sort between the third person and the promisee. Lorillard v. Clyde, 122 N. Y. 498, 25 N. E. 917, 10 L. R. A. 113; Ætna v. Fourth, 46 N. Y. 82, 7 Am. 314; Dow v. Clark, 7 Gray, 198; Flint v. Pierce, 99 Mass. 68, 96 Am. Dec. 691; Cottage v. Kendall, 121 Mass. 528, 23 Am. 286.

A careful consideration of the question suggests no reason why we should depart from the rule already laid down by us, or extend it to a case like that at bar, and we adhere to our former decisions. The general subject will be found discussed with learning and ability in 15 Harvard L. Rev. 767, by Prof. Williston, where all the cases are collected and referred to. So it may be said to be definitely settled law in this state that a third person for whose benefit a contract is made does not in all cases have a right of action thereon. To entitle him to enforce the promise there must appear to have been some privity, by contract or otherwise, between the promisee and the beneficiary, some obligation or duty owing from the former to the third person, giving the latter a legal or equitable claim to the benefit of the promise. No such privity or obligation existed in this case. Johnson, to whom the plaintiff agreed to pay the Lyman-Eliel Drug Company mortgage, sustained with reference to that debt no relation whatever to the drug company, and was under no legal or moral obligation

to pay it. They were total strangers so far as concerns this particular transaction. And plaintiff and Johnson did not, in entering into the contract, have the interests of the drug company in mind, and there was no purpose to impose upon plaintiff a personal obligation to discharge a debt he did not owe, and for the payment of which his promisee was not liable any further than was necessary to protect the lien of the mortgage then executed. The sole purpose was indemnity to Johnson, and to protect his mortgage, which was a second lien upon the property.

It was said in Nelson v. Rogers, 47 Minn. 103, 49 N. W. 526, in speaking of the promise by the grantee in a conveyance of land to pay an outstanding mortgage, for which the grantor was not personally liable, that "such a stipulation is presumed to be inserted primarily for the protection of the grantor. And it is only where payment of the debt as a personal obligation is necessary to his protection that the clause is to be construed as intended for the benefit of the mortgagee beyond his right of recourse to the land." That case states the gist of the rule and seems to harmonize fully with logic and sound principle. 15 Harvard L. Rev. 767, and note to Jefferson v. Asch, 53 Minn. 446, 55 N. W. 604, 25 L. R. A. 257, 39 Am. St. 618. It follows that as there was no evidence of a promise on the part of plaintiff to pay the Lyman-Eliel mortgage at the time he purchased the property, and his assumption of that debt in the mortgage to Johnson did not inure to the benefit of that company, defendant has no basis for his counterclaim, and plaintiff was entitled to a verdict as a matter of law. The rule of Hicks v. Stone does not apply.

The order of the court below granting a new trial, on the ground that the verdict was not sustained by the evidence, must therefore be reversed, and the cause remanded for judgment on the verdict. It is so ordered.