WILLIAM FRANK NEWELL and another *vs.* THOMAS COCHRAN, Jr., and others.

August 6, 1889.

**Partnership—Oral Agreement for Real-Estate Venture.**—An agreement between several parties to purchase real property for the purpose of selling again at a profit for their joint benefit, each contributing equally to the enterprise, and agreeing that the title shall be taken in the name of one of the parties for the benefit of all, *held* to be a contract in the nature of a partnership, and valid although not in writing.

**Same.**—The relation of the parties thus established was of a fiduciary character, imposing upon the associates the duty of fair and open dealing with each other. Each was entitled to an equal share in the proceeds of the property sold. One of them having induced his associates to sell the property for a price which was in fact all it was worth, he having a secret agreement with the purchaser, pursuant to which he realized a still larger sum from the property than his associates, they were entitled to an accounting, and to recover from him their share of that excess.

**Same—Liability of Purchaser.**—The purchasers who paid the larger price to one of the associates, pursuant to the secret agreement, cannot be required to pay equal sums to the others.

**Deed—Delivery.**—A deed of conveyance, delivered by the holder of the legal title to the person equitably entitled thereto, and retained by the latter, the deed running to a third person, is not necessarily to be regarded as having taken effect as a conveyance.

This action was brought in the district court for Ramsey county, and was tried by *Brill*, J., who ordered judgment for plaintiffs (W. F. Newell and John F. Fulton) against the defendant Earl A. Holdridge, and against the plaintiffs and in favor of the defendants Thomas Cochran, Jr., and Silas B. Walsh, (partners as Cochran & Walsh.) Plaintiffs appeal from the judgment in favor of Cochran & Walsh. The defendant Holdridge appeals from an order refusing a new trial. Among other matters litigated was the issue whether Cochran & Walsh were employed on behalf of plaintiffs' partnership as agents for the sale of the 40-acre tract mentioned in the opinion, and this issue was found against the plaintiffs. The other issues and the findings thereon are stated in the opinion.

*Chas. E. & A. G. Otis* and *Geo. B. Young*, for plaintiffs.

*Davis, Kellogg & Severance*, for defendant Holdridge.

*Henry J. Horn* and *Flandrau, Squires & Cutcheon*, for defendants Cochran & Walsh.

DICKINSON, J. The facts of this case as found by the court may be thus stated: Prior to March 26, 1886, the plaintiffs and the defendant Holdridge entered into an oral agreement with each other to purchase a tract of land of 40 acres owned by one John Ireland. The purchase was to be for their joint account, and for the purpose of selling the land at a profit. They were to be equally interested in the transaction, sharing equally in the payment of the purchase price, in the expenses that might necessarily be incurred in the management and disposing of the property, and in the profits and losses which might result. For convenience the title was to be conveyed to and held by Newell, but for the benefit of all. The purchase was made as contemplated, on the 26th day of March, for the sum of $70,000, and the title conveyed to Newell. A part of the purchase price was paid, each of the three purchasers paying an equal sum, and the remainder was secured by the notes of Newell and a mortgage upon the land. It was also agreed by the purchasers that each one should use his best endeavors to manage and sell the land for their joint benefit. Pursuant to a separate arrangement between Holdridge and one Stowell, the latter advanced to the former one-half of the purchase-money paid by him, and it was agreed between them that they should be equally interested in the transaction. Of this the plaintiffs had no knowledge, and in all subsequent transactions Holdridge acted as the sole owner of the one-third share. In June, 1886, Newell, at the request of Holdridge, executed and delivered to the latter a deed in terms conveying an undivided one-third of the land, subject to the mortgage, to Clara M. Holdridge, his wife. This was not intended to sever the interest of Holdridge from that of the plaintiffs, or to destroy the relations into which they had entered, but only as a means of establishing Holdridge's interest in the property in case of Newell's death. The deed was not recorded, and it does not appear to have been delivered to the grantee named in it, or that she knew of it. This land lies adjacent to and between the

cities of St. Paul and Minneapolis. In July and August, 1886, it was publicly reported that the establishment of a passenger motor line between those cities was contemplated, and efforts were made on the part of the defendants Cochran & Walsh, one Moore, and others, to induce the projectors to carry out the proposed undertaking. On the 5th of August, and thereafter until after the conveyance by the plaintiffs of their interest in the property, the negotiations had progressed so far that it seemed probable that the motor line would be built in the immediate future, and that it would run across this land, which would have greatly enhanced the value of the same. The defendants then knew the facts as to this probable construction, although the plaintiffs did not, nor did they know of such negotiations. In view of this probability Cochran & Walsh, with Moore and others, associated themselves together under the name of the " Reserve Township Syndicate," for the purchase of this with other lands. It was agreed by them and Holdridge that Moore should negotiate with Newell for the purchase of the land individually; that he should offer Newell $74,000, and should purchase for that price, if satisfactory terms could be made, taking a conveyance to himself, but holding the title for the " syndicate " and Holdridge. Holdridge was not willing to part with his interest at that price, but it was secretly agreed between him and the " syndicate " that if the purchase should be effected from Newell, Moore would hold one-third of the property for Holdridge and the assignee of the latter, and that Holdridge should then, at his option, either take a one-third interest in the syndicate, or sell his one-third interest in the land to the syndicate for such higher price as should thereafter be agreed upon; and that this agreement should be concealed from the plaintiffs. The offer was made as proposed. The plaintiffs then consulted with Holdridge, who falsely, and with intent to deceive and defraud them, and to induce them to sell, represented that he was willing to sell, and advised them to accept the offer. Relying upon this, without knowledge of the secret agreement or of the prospect for the construction of the motor line, and believing that the transaction involved the disposal of Holdridge's interest upon the same terms, the plaintiffs accepted the offer on the 5th of August, and Newell entered into a

contract with Moore in writing to sell the land. The conveyance was to be made within 30 days. One thousand dollars earnest-money was paid. At the end of 30 days, Moore not being then ready to complete the performance of the contract, Newell extended the time allowed therefor. At that time Newell knew of the negotiations for the motor line, and the prospect concerning it. September 20th the conveyance was made to Moore, who paid $21,700 in cash, and assumed the payment of Newell's notes and mortgages. Newell paid to Holdridge one-third of the money paid, which the latter immediately repaid to the syndicate. Holdridge did not take an interest in the syndicate, but sold to the syndicate the one-third interest in the property represented by him, at a price in excess of that for which the interests of the plaintiffs were thus procured. The plaintiffs would not have made this sale had they known of the secret agreement with Holdridge, although the land was then fairly worth no more than the price for which they sold. The defendants believed it to be worth more by reason of the motor project. Shortly after the events above stated, that project was abandoned, and the line has never been built. . However, the land has since then been sold by the syndicate at a profit, some other improvements having tended to increase its value. At the time of the combination of the defendants and others to purchase the land, and of the purchase, Cochran & Walsh knew that Holdridge was interested with the plaintiffs in the land, but, as the court finds, it does not appear that they knew the precise character of his relation with the plaintiffs, whether as a partner or tenant in common. Such being, in substance, the facts found by the court, it was thereupon considered that as to the defendant Holdridge the plaintiffs were entitled to an accounting, and that he was responsible to the extent of two-thirds of the price realized by him upon the sale to the syndicate in excess of his proper share of the price for which the sale by Newell was made; and that as to Cochran & Walsh the plaintiffs were not entitled to any relief. Holdridge appealed from an order refusing a new trial, and the plaintiffs from a judgment entered in favor of Cochran & Walsh.

It is contended on the part of Holdridge that the contract between himself and the plaintiffs was void, being in contravention of the

statute of frauds and of the statute of uses and trusts. There is some conflict in the decisions upon this subject, but the question is not a new one in this state. In *Hodge* v. *Twitchell*, 33 Minn. 389, (23 N.W. Rep. 547,) the same question was presented in the appellant's brief, and the decision, although not referring to that feature of the case, involved the determination of it adversely to the appellant. See, also, *Stern* v. *Harris*, 40 Minn. 209, (41 N. W. Rep. 1036;) *Dale* v. *Hamilton*, 5 Hare, 369; *Chester* v. *Dickerson*, 54 N. Y. 1; *Bunnel* v. *Taintor*, 4 Conn. 568; *Holmes* v. *McCray*, 51 Ind. 358; *Richards* v. *Grinnell*, 63 Iowa, 44, (18 N. W. Rep. 668.) We therefore hold that the contract was valid.

The finding of the court as to Holdridge having sold his interest for a sum proportionately larger than that realized by the plaintiffs is sufficiently supported by the evidence in the case. The conclusion as to Holdridge's accountability to the plaintiffs, upon the facts found, is right. It is assumed by the defendant that the court found that the plaintiffs and Holdridge were not partners. This assumption is based upon the fact that the court, after setting forth the facts specifically, in substance as above stated, then found that "save as aforesaid" the allegations of the pleadings were not established. We need not pause to consider whether the court intended to find that there was not a complete partnership. From the facts specifically found the legal conclusion follows that the relation created between the parties was in the nature of a partnership, and this relation imposed upon the associates the duty of fair and open dealing between themselves in the prosecution of the common enterprise. *Hodge* v. *Twitchell*, 33 Minn. 389, (23 N. W. Rep. 547;) *Stern* v. *Harris*, 40 Minn. 209, (41 N. W. Rep. 1036;) *Hulett* v. *Fairbanks*, 40 Ohio St. 233, 244; *King* v. *Wise*, 43 Cal. 628. The plaintiffs had a right to rely upon the judgment and advice of the defendant Holdridge as being honestly given for the promotion of the common purpose, and not for the purpose of deception, and the securing of an individual advantage. It may be granted that Holdridge might have refused to part with his interest except upon terms satisfactory to himself, and that, if the plaintiffs had sold their interest, and Holdridge had afterwards sold his upon more favorable terms,

there would have been no cause of action. But, however that may be, he is liable, upon the facts stated, to the extent of two-thirds of the consideration received by him in excess of that for which he dishonestly induced the plaintiffs to sell. He, believing the property to be worth more, induced his associates to sell the whole property, as they supposed, for the price offered; he having at the same time a secret agreement with the purchasers, securing to himself the option to share with them in the supposed advantages of a good bargain, or to receive individually a larger price for an undivided one-third of the property. As between himself and the plaintiffs that excess received by Holdridge must be deemed to be, as it was in fact, a part of the price paid for the property, and it should be shared equally between them. It does not affect the case that in fact the amount already realized by the plaintiffs on the sale was equal to two-thirds of the real value of the land. They were entitled to receive, not merely their proportion of the value of the property, but of the entire sum realized from the sale of it.

The findings of the court as to the effect of the deed to Clara M. Holdridge are sustained. The case justified the conclusion that the title was never transferred by means of that deed. The case is distinguishable from those where the owner of land executes a conveyance and places it on record, or delivers it to a stranger for the benefit of the grantee named in it. The property described in this deed was the interest which, by the terms of the agreement between Holdridge and the plaintiffs, belonged to him. Holdridge procured the deed to be executed. He received it, and, so far as appears, never delivered it to his wife. In view of his own relation to the property, and of the circumstances under which the deed was executed and placed in his hands, it was properly optional with him whether effect should be given to the deed by delivering it to his wife or not. His conduct strongly indicated that he never did determine to make the deed effectual by delivery, but suffered the legal title to remain in Newell. Even in his answer Holdridge pleads that the conveyance by deed was to himself, which however was not the fact.

Our conclusion is that as to Holdridge the decision of the court was right, and the order refusing a new trial should be affirmed.

We come now to consider the appeal of the plaintiffs, involving the question of the liability of Cochran & Walsh. We deem the evidence to have justified the findings of the court, to the effect that Cochran & Walsh were not employed by the plaintiffs as agents for the sale of the property, and that the property was really worth no more than the price for which the sale was supposed by the plaintiffs to have been made, and of which they received their proper share. In no view of this case could Cochran & Walsh have been held responsible to the plaintiffs for the sum for which the syndicate afterwards sold the property in excess of that for which they purchased it. To such a claim it would be enough to answer that the property was actually sold to the syndicate; that this action is predicated upon the fact of such a sale having been made; and that damages for any fraudulent conduct inducing the plaintiffs to sell would be measured by the difference between the price for which the sale was made by the plaintiffs and the actual value of the property. Therefore, upon the facts of this case, there could have been no recovery of substantial damages against Cochran & Walsh merely upon the ground that the plaintiffs had been induced by fraudulent means to sell the property.

The further question is presented as to whether Cochran & Walsh are liable to the plaintiffs in respect to the excess of the purchase price which Holdridge received over that realized by the plaintiffs. We will assume—what the plaintiffs claim should have been found by the court as a fact in the case—that Cochran & Walsh knew of the relations subsisting between Holdridge and the plaintiffs with respect to the property. It must be borne in mind that, since the plaintiffs realized all that the property was worth, so that they can recover no substantial damages upon the ground that the sale was induced by fraud, their right of recovery is necessarily *limited to the excess of the price received by Holdridge over that received by the plaintiffs*. They are entitled to recover their proper share of what was thus paid, and *because it was paid*,—because that was really a part of the price for which the land was sold. The claim does not rest upon any contract of Cochran & Walsh and their associates to pay, as the price of the property, a sum which they have refused or neglected to pay; but rather upon the fact that they have made pay-

ment.    But Cochran & Walsh and their associates were purchasers only.    They stood in no relation of trust towards the common owners of the property, nor were they bound to see to it that Holdridge accounted to the plaintiffs for what he received, and that he paid to them their proper shares.    We think that the contest is narrowed to one concerning the proceeds actually paid by Cochran & Walsh and their associates to one of the parties who stood in the relation of partners to each other.    It can hardly be that the very fact that the purchasers paid this larger sum to Holdridge as the price of the property than they had paid to the others, creates a liability to pay so much of the purchase price a second time to the plaintiffs, or that by reason of having made such payment they are answerable for the equitable distribution of the fund by Holdridge.    The case would have been different if the plaintiffs had been fraudulently induced to sell for less than the value of the property.    In such a case, if Cochran & Walsh had been parties to the fraud they might have been responsible in damages.

We consider, therefore, that both the judgment and the order refusing a new trial should be affirmed.