## R. ZEGLIN v. EUGENE TETZLAFF.[1]

### July 23, 1920.

### No. 21,840.

**Corporation — fraud in sale of stock.**

1. There is evidence sufficient to sustain a finding of the jury that plaintiff was induced by misrepresentation to purchase corporate stock from defendant.

**Same — representation as to value.**

2. A statement by defendant that his stock could not be bought for less than $120 a share, taken in connection with statements of other alleged facts calculated to give it value, may be construed as a representation that the stock was worth $120 a share.

**Contract — right to rescission for fraud may be lost.**

3. A right to rescind for fraud may be lost, after discovery of the fraud, by acts of affirmance, by acts or delay which evidence an abandonment of the right, or by acts of such a character, or delay so long, that to now assert the right would put the defendant to disadvantage. The question whether plaintiff lost his right of rescission in this case was one of fact for the jury.

**Evidence of value of stock admissible.**

4. Evidence of the value of the stock at the time of the sale was properly received.

**Cross-examination of plaintiff.**

5. Numerous rulings on evidence are considered and *held* to present no reversible error. Where a charge of fraud depends on the testimony of plaintiff, great latitude should be allowed on cross-examination. Sufficient latitude was allowed in this case.

[1] Reported in 178 N. W. 954.

**Exclusion of evidence proper.**

　　6. There was no error in the exclusion of evidence offered by de-
fendant.

Action in the district court for Hennepin county to recover $5,000
paid for the purchase price of certain stock. The separate demurrer of
Northwestern Marble & Tile Company was sustained, and the separate
demurrer of Eugene Tetzlaff was overruled, Waite, J. The case was
tried before Fish, J., and a jury which returned a verdict for $5,706.88.
From an order denying his motion for a new trial, Eugene Tetzlaff ap-
pealed. Affirmed.

*Robert S. Kolliner,* for appellant.
*Herbert T. Park,* for respondent.

HALLAM, J.

1. In December, 1914, plaintiff purchased from defendant 44 shares of
stock in the Northwest Marble & Tile Company. Plaintiff claims that he
was induced by fraud to make the purchase and that he rescinded the
purchase, and he brought this action to recover the price paid. Plain-
tiff had a verdict. Defendant appeals.

Defendant was president of the company. Charles N. Gramling was
its secretary. Plaintiff was well acquainted with both and had on sev-
eral occasions loaned defendant money on his unsecured note. Plaintiff's
evidence tends to prove the following:

On November 4, 1914, Gramling wrote plaintiff the following letter:
"The writer, knowing that our company is personally familiar to you,
I am taking the liberty of addressing this letter to you. A further
reason for so doing is that the writer is aware of your personal acquaint-
ance with the majority of our directors.

"Owing to certain stringent financial conditions, I am authoritatively
informed that one of our stockholders will shortly endeavor to dispose of
between one hundred and two hundred shares of capital stock in our
company.

"Inasmuch as our board is endeavoring to secure representative citizens
as stockholders of our company, the writer thought that possibly you
would care to avail yourself of an opportunity to secure a portion of this

stock. Should you be interested, kindly arrange to see me Friday afternoon next at the office of the Northwestern Marble & Tile Company, at 27th street and 27th Avenue South."

The stock referred to was defendant's stock. Plaintiff called upon Gramling and was told that the price of the stock was $115 a share. He was ignorant of the ownership of the stock and at once called on defendant and asked his advice. Defendant asked: "What is it offered to you for?" Plaintiff told him $115 a share. Defendant said: "I will tell you this, my stock you can't buy for less than a hundred and twenty." He further said: "I know the party that has this stock * * * he has given it as security in the bank, and the bank don't like to carry it any longer." Plaintiff asked if it was "a good dividend paying stock." Defendant said: "This stock pays dividends. We have not up to date paid any dividends yet, but we put all the money * * * that we clear, into our surplus fund, and we now have a surplus fund of about seventy thousand dollars and maybe more." He said that course wasn't necessary any more under the circumstances, "and it would be now a dividend paying proposition." "From now on this stock is going to pay dividends." He said further: "We have made clear this year a little over $33,000. We have outstanding common stock $200,000; we have no preferred stock; so you can well see that we can pay 10 per cent or more if we wanted to." Plaintiff then talked to Gramling again. He received from Gramling a financial statement of the company, but it is not certain that he fully understood it. On November 11 Gramling wrote him this letter:

"The writer has just 'phoned the party in question with reference to the matter discussed this afternoon. After considerable persuasion the party in question has agreed to sell forty shares for the amount of money mentioned by you this afternoon. Am prepared to make the transfer for you either tomorrow afternoon or Friday afternoon. Please 'phone me in advance so that I can arrange the proper transfer of the papers."

Following this and on December 4 plaintiff purchased the stock.

The writing of these letters by Gramling is admitted. Defendant denies that he ever saw the letters, and not only denies making the representations charged, but denies that plaintiff ever called on him. The

jury found the issues of fact in favor of the plaintiff. We think the evidence sufficient to sustain their finding.

There was deception as to the ownership of the stock and as to the financial pressure which it was said impelled the owner to sell. Perhaps this did not give rise to a cause of action. These matters, are, however, of undoubted importance taken in connection with the representation as to the accumulated surplus, the earnings and the value and dividend paying qualities of the stock. They show the confidence and reliance which defendant permitted plaintiff to repose in him in a matter in which defendant had an adverse interest.

According to plaintiff's evidence, defendant made a positive representation that the corporation had accumulated a surplus fund of about $70,000 "and maybe more." His testimony is not, in our opinion, susceptible of a construction, as defendant contends, that defendant merely said the corporation had that amount of cash on hand. In fact the surplus was about $47,000. The representation if made was untrue, and was actionable.

In this connection the alleged statement that the stock "would be now a dividend paying proposition" is material although not treated as a separate ground of recovery by the trial court. In connection with the statements as to the earnings, the former policy of accumulation and the adequate surplus accumulated, this statement too was essentially a statement of fact. The jury might find the statement untrue, for no dividend was subsequently declared, and none paid except one declared years before.

2. The court, in reciting the claims of plaintiff, charged the jury that plaintiff claimed that defendant said "that the stock was worth $120 a share instead of $115," and that "said stock and the whole thereof was of the net value of $120," and instructed them: "If there was a representation * * * that that stock was worth a particular sum, that, if false, was such a representation as you will consider whether the plaintiff had a right to rely upon it under the circumstances in the case." The statement was inaccurate. The evidence was that defendant did not in direct language represent the value of the stock to be $120 a share. We think, however, there was no reversible error. Defendant was covertly trying to sell his stock to plaintiff at $115 a share. Plaintiff went to him

for confidential advice as to the value of the stock. Defendant went at some length into a statement of the earnings, the surplus, the dividends, and said his stock could not be bought for less than $120 a share. Brushing aside forms of expression, this was plainly intended as a representation, backed up by facts, that this stock was worth at least $120 a share, and plaintiff no doubt so understood it. We think there was no error in submitting to the jury the question whether a representation of value was made.

-3. Defendant contends plaintiff lost his right of rescission by acquiescence. One who desires to rescind for fraud must do so promptly on discovering the fraud. Parsons v. McKinley, 56 Minn. 464, 57 N. W. 1134; Arcade Inv. Co. v. Hawley, 139 Minn. 27, 165 N. W. 477; Gunderson v. Halvorson, 140 Minn. 292, 168 N. W. 8. This transaction occurred in December, 1914. We must bear in mind that plaintiff did not then know he had purchased defendant's stock. From rumors heard from time to time during 1915, plaintiff gradually became possessed of this fact and gradually became convinced that he had been deceived. He had a financial statement of the company and he went to some meetings. But it is not clear how much information he acquired from these sources, or how much information he had when he went to the meetings. In the spring of 1916, he testified he went to defendant and told him he would have to take back the stock and give his money back, "because it doesn't materialize * * * as you advised me your stock was," and he says defendant promised to do this in the fall. If plaintiff proceeded with reasonable promptness up to this point, the rescission was then complete, and plaintiff had a money demand against defendant which he could enforce at any time within the limit of the statute of limitations. See Brown v. California & W. L. Co. 145 Minn. 432, 177 N. W. 774.

The court submitted to the jury the question whether plaintiff disaffirmed his contract with reasonable promptness. By their verdict they found this issue in plaintiff's favor. Defendant contends that the evidence does not sustain their verdict. It is not always easy to determine what is reasonable promptness in disaffirming a contract for fraud. Much depends on the circumstances of the case. An affirmative act of

ratification will terminate the right, for this is an assent, and is the same as though similar assent had been given when the contract was made. Whitcomb v. Hardy, 73 Minn. 285, 76 N. W. 29. If the conduct of the defrauded party is mere delay, if it is so long, and the circumstances of such a character, as to establish an intentional abandonment of the right of rescission, or if it is so long that the other party has been put to a disadvantage so that it would be inequitable to allow him to assert the right, then the right of rescission may be lost. Sweet v. Lowry, 131 Minn. 109, 154 N. W. 793; 9 C. J. 1201.

The question whether a plaintiff disaffirmed with reasonable promptness is usually one of fact. We think it was in this case.

4. We think evidence of the value of the stock was properly received. It had some bearing on the issues. The court excluded evidence offered by defendant baring on its "value now." This evidence was immaterial.

5. Defendant excepts to numerous rulings of the court on evidence. Counsel in his brief says these exceptions are "too numerous to permit of individual extended discussion," and we take it he does not contend that any one ruling, taken alone, would constitute reversible error, but that, taking all the rulings together, the attitude of the court seriously prejudiced defendant. Defendant groups these exceptions and discusses them in groups.

Defendant contends that he was too much restricted in his cross-examination of plaintiff. We are mindful of the rule that, in an action based on fraud, alleged to have been perpetrated in conversation when only plaintiff and defendant were present, and where the evidence consists largely of assertions by plaintiff and denials by defendant, great latitude should be allowed in cross-examination of plaintiff, to the end that any facts having legitimate bearing on the truthfulness of his story may be placed before the jury. Riddell v. Munro, 49 Minn. 532, 52 N. W. 141; Nicolay v. Mallery, 62 Minn. 119, 64 N. W. 108; Cohen v. Goldberg, 65 Minn. 473, 67 N. W. 1149. We have examined the record in this case with much care, and we do not see that defendant's interests were prejudiced by adverse rulings of this character. The cross-examination of plaintiff was very extended, several times longer than his direct examination, and it was thorough, and was permitted, as we think, with fairness. We cannot go into these numerous exceptions in detail, but, as an

example, questions were asked of plaintiff as to what statements he made to his lawyer, and as to a report his lawyer made to him upon investigations he had made into the facts. Extended examination upon such subjects should not be necessary. In some instances it is apparent from the record that the examination would have availed nothing, as, for example, the inquiry designed to elicit the fact that plaintiff was confusing representations as to the Marble company with representations as to an ornamental iron company, with which defendant was also connected.

Another class of exceptions relates to the rejection of evidence of defendant's own witnesses as to facts and circumstances having an indirect bearing on the issues. For example, evidence was excluded of conversation between Tetzlaff and Gramlin and between Tetzlaff and the general manager of the Marble company leading up to the negotiation of the sale of defendant's stock. We cannot see the importance of such testimony. We think the court committed no reversible error in excluding the testimony offered.

Exception is taken to the remarks of the court which counsel says "certainly did us no good." Our examination of the record discloses no remarks by the court which we consider prejudicial.

Order affirmed.

HOLT, J., took no part.

QUINN, J., absent, took no part.