A. R. BAKKE v. ERWIN H. KELLER.[1]

July 13, 1945.

No. 33,995.

[1]Reported in 19 N. W. (2d) 803.

*John J. Kelly* and *Bauers & Carlson,* for appellant.
*Guesmer, Carson & MacGregor,* for respondent.

LORING, CHIEF JUSTICE.

Action for specific performance to compel defendant to convey an undivided one-half interest in certain real property in Minneapolis and for an accounting in connection therewith. The court made findings and ordered judgment in favor of defendant on February 23, 1944. On March 28, 1944, the court amended certain of the findings but denied plaintiff's motion for amended conclusions of law or for a new trial. Plaintiff appeals from the judgment entered on November 10, 1944.

The facts are as follows: Plaintiff, a real estate broker in the city of Minneapolis, on August 17, 1942, advised defendant that he knew of a certain apartment building which might be purchased at a bargain and upon which he would be entitled to a commission if he found a purchaser therefor. He proposed to defendant that they purchase the property together, and that, if defendant would raise the required down payment, plaintiff would assign to him *all commission* he might receive on the sale, with the understanding that after defendant had been repaid his down payment from the rentals of the property they would then each own an undivided one-half interest in the premises, subject to any additional financing required to complete the purchase.

Defendant manifested interest in the proposition, and about August 17, 1942, plaintiff showed him the building involved, known

as the Arcola Apartments, 126 South Twelfth street, Minneapolis. On August 21, he took defendant to a representative of Thorpe Brothers, Inc., who represented the owners of the property. Defendant thereupon made a written offer to purchase the premises for $60,000, on terms of $6,000 down with the balance payable in specified monthly installments and bearing interest at a specified rate. At that time defendant gave the representative of Thorpe Brothers his check for $200 as earnest money on the offer.

A few days later, on August 24, 1942, plaintiff called on defendant, and they entered into the following written agreement:

"Minneapolis Minnesota
"August 24 1942

"It is agreed by and between Erwin H. Keller and A. R. Bakke, That A. R. Bakke is to assign *All commission* that will be due said Bakke from the Building known as The Arcola 126-south 12th street Minneapolis Minnesota, to Erwin H. Keller and said commission is to be used by Erwin H. Keller in the purchase of said Building. Erwin H. Keller is to advance the balance of the down payment for the purchase of said Building. After Erwin H. Keller has received all money he has advanced, for the purchase of said Building, Erwin H. Keller and A. R. Bakke, or assign are to divide evenly all the profits fifty-fifty that are derived from the rents or sale of said Building, and Erwin H. Keller is to assign, convey and transfer to A. R. Bakke an undivided one half interest in said Building and furniture.

"E. H. Keller
"A. R. Bakke" (Italics supplied.)

At the same time, plaintiff executed and delivered the following assignment of his commission:

"Minneapolis Minnesota
"August 24 1942

"For valuable consideration, I hereby assign to Erwin H. Keller *all the commission* that will be due me from Thorpe Bros., or Clinton C. Bowler for the sale of the Arcola 126-south 12th Street Min-

neapolis Minnesota From Provident Mutual Life Insurance Co., to Erwin H. Keller.

"A. R. Bakke" (Italics supplied.)

The original offer made by defendant was not accepted by the owner, and on September 16, 1942, defendant submitted a second offer, this time agreeing to pay $62,500, with a $6,300 down payment, the balance payable in monthly installments as before. The $200 previously paid was retained as earnest money on the second proposal.

Plaintiff was inducted into the United States army and left Minneapolis the latter part of September 1942 to serve in various camps throughout the country. In November 1942, while stationed at Lowry Field, Colorado, he received the following letter from defendant:

"Saint Paul, Minnesota
"Nov. 10th, 1942

"Dear Friend Bakke,

"In discussing further the purchase of the Arcola with Bowler he advises me that the commission is $600.00 and not $1,500.00 *anticipated*. Also the insurance Co. will not allow the commission to apply on the purchase price but ist [it] is allowed at the rate of $50.00 per month. The same holds trough [true] of the Rosyln [Rosslyn] Consequently if the sales are made on the present basis your only interest can be a commission interest of $600.00 on each or $1,200.00 payable $100.00 per month for one year.

"So the deal we talked of originally on the Arcola cannot possibly be consummated as there was to be $3,125.00 cash credit which makes you over $3,000.00 short. So there is only one thing to do as I see it and that is to void any understanding or agreements we previously had. If you will do this I will endeavor to raise the money personally to go through with the Arcola deal and you will make your commission. *Otherwise there is no use of my going ahead under any circumstances and as a result we will both lose.* Incidentally I have sold the Preston Mg't and am getting the money on the Chattel so will have enough to close up the deal. All I need

is your voiding of the past agreements which were never fullfilled on your part as you were called away for service and the insurance company didn't pay off as you had anticipated consequently the only thing we can do is to take the deal as I have suggested.

"Bakke do write me immediately what you think of this suggestion and send me a clear slate so that I can go ahead with this deal.

"Your friend,

"E. H. Keller" (Italics supplied.)

Upon receipt of the aforesaid letter, plaintiff immediately wrote Thorpe Brothers as follows:

"November 16, 1942.

"Thorpe Brothers,
  Minneapolis, Minnesota.

  "Att'n: C. C. Bowler

"Gentlemen:

"I received your letter of the 6th and wish to state that I also received one from E. H. Keller, * * *.

"Now in regards to the commission that will be due from the sale of the Arcola Apartments, the amount you stated will be satisfactory to me, providing it is satisfactory to E. H. Keller. As you know, I have assigned that commission to E. H. Keller, so it is entirely up to you and Mr. Keller to agree on the amount and terms of said commission.

"*As you further know, E. H. Keller has assigned to me one-half interest in the Arcola Apartments.* Mr. Keller wrote me a letter on November 10th, stating that he would like to have me accept the commission and have me reassign my half interest in the Arcola Apartments to him. *Now that is absolutely out. I am going to stand by the agreement that Mr. Keller and myself signed, which I sent you the copies of, and that is that I will keep my half interest in the Arcola Apartments* and the said commission I have assigned to Mr. Keller goes to him.

* * * * *

"Sincerely yours,

"Arnt R. Bakke" (Italics supplied.)

Plaintiff sent defendant a copy of his letter to Thorpe Brothers and wrote him as follows:

"November 16, 1942.

"Mr. E. H. Keller,
  * * *

"Dear Mr. Keller:

"Your letter of the 10th received.

"*I am enclosing herewith a copy of the letter I sent to Thorpe Brothers and I think it explains everything you want to know as to the status of the commission* that will be due from the sale of the Arcola Apartments, *also how you and I stand on the Arcola Apartments,* and also in regards to the commission due from the sale of the Rosslyn Apartments.

"Hoping this is satisfactory to you, I am

"Sincerely yours,
"Arnt R. Bakke
"* * *." (Italics supplied.)

Subsequently, defendant, with full information on all details of the $600 commission plaintiff was to receive and which the owner had agreed to pay in cash, and while plaintiff was still absent in the army, proceeded to complete the purchase of the premises. His original $200 earnest money payment was applied thereon and the balance of the down payment paid by him. This was pursuant to the second offer made by defendant, modified to the extent that the owner of the premises paid the current taxes and added the amount thereof to the agreed purchase price in order to relieve defendant from paying them at that time.

The contract for deed covering the sale was placed in defendant's name. He instructed Thorpe Brothers to pay the $600 commission direct to plaintiff, and took the position that plaintiff had no right, title, or interest in the premises. The purchase was completed on March 15, 1943. On March 22, 1943, plaintiff was discharged from the army and returned to Minneapolis. He learned that defendant had completed the sale in his absence and had instructed Thorpe

Brothers to turn over the $600 commission to him, contending that he had no other right, title, or interest in the premises. He thereupon received the $600, tendered it to defendant, and demanded that defendant fulfill the agreement according to its terms. Defendant refused the $600 and denied any obligations under the contract. This action for specific performance and for an accounting followed.

As a defense to the action, defendant alleged that he had been induced to sign the agreement by plaintiff's fraudulent misrepresentations that the commission on the sale of the Arcola Apartments would be $1,500 instead of $600; that he was to receive additional sums from plaintiff to the total extent of one-half the required down payment on the premises; and that the commission was payable in cash rather than in monthly installments.

Plaintiff denied that the agreement was contrary to that expressed by the parties in writing, and testified that he had promised merely to assign to defendant *all* commission he would receive on the transaction; that he did not know the exact amount of such commission, but had repeatedly told defendant that he would try to get as large a commission as possible; that defendant, after full knowledge of the exact amount of commission and after it had been agreed to pay the same in cash, had proceeded to complete the purchase of the property; that at no time had plaintiff agreed to pay one-half the down payment or made any other promises than those expressed in the writing between the parties.

Both plaintiff and defendant had had substantial prior dealings and experience in business and real estate transactions. There is no claim that defendant could not read English or that he failed to understand the written terms of the contract involved.

Upon the conclusion of the testimony, the trial court made findings determining:

"That the amount of plaintiff's commission as sub-agent was not fixed or determined as between plaintiff and defendant, but the weight of evidence is that the defendant was informed by

plaintiff that said commission would be *about $1,500*, and not $600 as claimed by plaintiff.

\* \* \* \* \*

"That as to defendant's claim that there was an agreement that *half of the down payment* would be paid by the plaintiff *the weight of evidence is that no such agreement was entered into.*" (Italics supplied.)

In the memorandum attached to and made a part of the findings the court stated:

"The written agreement of August 24, 1942, was not completed in two respects: Neither the amount of plaintiff's commission nor the purchase price of the property was definitely determined. Oral evidence was therefore proper to be received to supply the oral understanding, if any.

\* \* \* \* \*

"Later correspondence and oral negotiations between the parties show that the defendant never did agree to the commission of $600, consequently the preponderance of evidence is that the minds of the parties never met on the amount of the commission to be applied on the purchase price, \* \* \*.

\* \* \* \* \*

"The court has therefore concluded that there never was a binding contract entered into for the purchase of the property on a partnership basis, and plaintiff is not entitled to recover anything in this action."

In his motion for a new trial, in addition to other relief prayed for, plaintiff moved that, in equity, the court insert whatever sum was found that had been understood by defendant as the commission to be assigned, and direct that, upon payment thereof, defendant be ordered to assign and transfer to plaintiff an undivided one-half interest in the premises, subject to any balance due defendant on his down payment and subject to any further unpaid balance of the purchase price. This was denied.

■ The agreement of August 24, 1942, is in effect a partnership agreement between plaintiff and defendant to deal in the real property known as the Arcola Apartments, 126 South Twelfth street, Minneapolis. Therein it was provided that each of the parties was to contribute to the purchase and that each was to have a one-half interest in the premises upon the repayment to defendant of the amount of his investment; and that they were to divide equally all profits derived either from the rentals or from the subsequent sale of the building. We have frequently held that such agreements constitute partnerships to deal in land, even though they may relate to but one parcel of land, and that, as such, they are not within the statute of frauds and may be enforced, although not in writing or only partially integrated. Under such circumstances, the contention that the agreement here was unenforceable in that its complete terms were not expressed therein is without merit, for, if it be held incomplete on its face, under well-established principles, the unexpressed portions thereof may be shown by parol evidence. This is particularly true where, as here, a joint contribution is to be made to the enterprise and where performance within a year has otherwise taken it out of the terms of the statute. Newell v. Cochran, 41 Minn. 374, 43 N. W. 84; Fountain v. Menard, 53 Minn. 443, 55 N. W. 601, 39 A. S. R. 617; Sonnesyn v. Hawbaker, 127 Minn. 15, 148 N. W. 476; Kent v. Costin, 130 Minn. 450, 153 N. W. 874; Hammel v. Feigh, 143 Minn. 115, 173 N. W. 570.

■ However, it does not appear that the agreement is incomplete. It definitely specifies that plaintiff was to assign to defendant *all* commission to be earned in connection with the sale of the Arcola Apartments. The exact amount of the commission was unknown at the time, as that would depend upon the sale price of the property and the rate of commission agreed upon between plaintiff and the owner of the premises. Defendant accordingly entered into the agreement knowing that any representation as to the amount of plaintiff's commission related to future conditions and contingencies. Nevertheless, the bargain

appealed to him to the extent that he was willing to sign the contract notwithstanding the full amount of the commission was later to be determined. Apparently defendant was well satisfied to speculate on the proposition whether the commission might be $600, $1,500, or some other sum. The trial court concluded that, because the exact amount of plaintiff's commission was undetermined at the time the agreement was executed, there was no meeting of the minds and hence no contract. In effect, such a finding alters the plain terms of the agreement, which definitely provides that *all* of plaintiff's commission (regardless of the amount) was to be assigned to defendant. There is no ambiguity or doubt about the meaning of the term "all," and both parties must have been well aware of such meaning. The fact that in his mind defendant may have had a fixed idea as to how much "all" would ultimately be does not mean that the parties did not execute a binding contract at the time the written instrument was signed. As stated in Stong v. Lane, 66 Minn. 94, 68 N. W. 765:

"If there be a meeting of the minds of both parties upon the terms of a contract, and those terms are *free from ambiguity,* and there be no fraud or misrepresentation, *a mistake of one of the parties alone, resting wholly in his own mind, as to the identity of the subject-matter of the contract,* is no ground for rescission." (Italics supplied.)

See, 2 Dunnell, Dig. & Supp. §§ 1742, 1743.

We have held that the word "all" when expressed in a written agreement means just what it says and that parol evidence is not admissible to vary its plain and common meaning. In Bell v. Mendenhall, 78 Minn. 57, 80 N. W. 843, where an agreement provided that "all of the outstanding indebtedness" was to be paid, this court upheld the trial court's rejection of evidence offered in an attempt to give the word a different meaning than the ordinary concept thereof. Therein this court stated (78 Minn. 63, 64, 80 N. W. 844):

"The effect of this class of evidence * * * would have been to

cut down and limit the liability * * * to the debts expressly mentioned in the list * * * [which was] in no manner referred to * * * [in] the contract * * * which * * * stipulated that the indebtedness to be taken care of was 'all of the outstanding indebtedness * * *.

"To give any weight to the evidence * * * would be to make a new contract for the parties; for, as was said when the case was here before, the covenant to pay is clearly and concisely expressed,—has no uncertainty in its meaning,—and the promise was for the equal and ratable benefit of all of the creditors. The character of conclusiveness is given to written instruments deliberately adopted by the parties as embodying their final agreements, and as to the terms, conditions, and limitations thereof the written contracts must speak for themselves."

In accordance with the foregoing well-established principles, we hold here that the contract is free from ambiguity and that any doubt or uncertainty as to the amount or terms of payment of the commission which was to be paid or assigned arose from the court's admission of parol or extrinsic evidence to vary its clearly expressed terms.

3. Ordinarily, where it is alleged that the execution of a written instrument was procured by fraudulent representations, the court may admit parol evidence relative to acts and statements of the parties to ascertain if fraud actually induced the making of the instrument. Under this doctrine, parol evidence was properly .admissible here to ascertain whether plaintiff's fraudulent representations induced defendant to execute the agreement. Such evidence, however, did not disclose that plaintiff had made any misrepresentations as to existing or prior facts, but that his representations, if any, related to what might take place in the future relative to the amount and terms of the commission. It is well settled that misrepresentations as to future events when not made to deceive do not authorize the rescission of a contract although the contingencies do not occur as represented. See, Bigelow v. Barnes, 121 Minn. 148, 140 N. W. 1032, 45 L.R.A.(N.S.) 203; Can-

non Falls Holding Co. v. Peterson, 184 Minn. 294, 238 N. W. 487.

In this connection it may be noted that, after ascertaining the correct amount of the commission, defendant ratified and performed the agreement, thereby waiving any claim to a right to rescission based upon the alleged fraudulent representations of plaintiff. As stated in Zeglin v. Tetzlaff, 146 Minn. 397, 178 N. W. 954:

"A right to rescind for fraud may be lost, after discovery of the fraud, by acts of affirmance, by acts or delay which evidence an abandonment of the right, or by acts of such a character, or delay so long, that to now assert the right would put the defendant to disadvantage."

Finally, on this issue the findings clearly disclose that the court did not determine that plaintiff had made any false or fraudulent representations as alleged by defendant and did not find that the contract had been induced by fraud. On the contrary, the court found untrue the claims made by *defendant* that plaintiff promised he would pay in one-half the required down payment as an induce-. ment for defendant's execution of the agreement. Since such findings are unchallenged here, it would appear that further consideration of this issue is unnecessary.

It is contended that parol evidence was properly admitted under the theory that such evidence is always admissible to show the real consideration for an agreement. While it is true that parol evidence may be properly introduced for this purpose, this rule is subject to the limitation that such evidence may not defeat or vary the terms of a written contract which is clear and unambiguous. As stated in 32 C. J. S., Evidence, § 958:

"Where the statement * * * as to the consideration is more than a mere statement of fact or acknowledgement of payment of a money consideration, and is of a contractual nature, as where the consideration consists of a specific and direct promise by one of the parties to do certain things, this part of the contract can no more be changed or modified by parol or extrinsic evidence

than any other part, for a party has the right to make the consideration of his agreement of the essence of the contract, * * *."

And § 956a:

"Where the effect of parol evidence contradicting the consideration expressed in the instrument or showing the true consideration to be different therefrom would be to change or defeat the legal operation and effect of the instrument, or to add new matter to an agreement complete on its face, the evidence is not admissible; * * *."

In Bell v. Mendenhall, 78 Minn. 64, 80 N. W. 844, *supra,* this principle is expressed as follows:

"* * * Nor will a party, under the guise of showing what the real consideration of a contract was, be permitted to cut down or vary the stipulations of his written covenant by proof of a parol agreement, either antecedent to or contemporaneous with the writing."

See, also, Kramer v. Gardner, 104 Minn. 370, 116 N. W. 925, 22 L.R.A.(N.S.) 492; Laughren v. J. S. Nolan Sales Stable Co. 163 Minn. 85, 203 N. W. 445; Thiem v. Eckert, 165 Minn. 379, 206 N. W. 721; Annotation, 100 A. L. R. 32; Patterson v. Texas Co. (5 Cir.) (1943) 131 F. (2d) 998.

The consideration expressed in the agreement was more than the mere recital of a pecuniary amount to be paid. Plaintiff was instrumental in directing defendant's attention to the bargain and in assisting him in making the initial contacts and proposals for the purchase of the property. The contract did not express the exact amount of commission to be assigned by plaintiff, but did specify that *all* such commission was to be assigned. Clearly, the consideration expressed was of a contractual nature, which could not be changed by parol evidence even though such evidence may have been admissible to show what "all" the commission ultimately amounted to. While parol evidence thus may have been admissible, since the language of the contract is clear and

unambiguous and since the consideration expressed therein was of a contractual nature and not the mere recital of a pecuniary receipt, such parol evidence could not change the terms of the agreement or otherwise permit defendant to escape definite obligations imposed upon him thereby.

■ Defendant asserts that the contract is unconscionable and therefore that a court of equity should not enforce the same. With this contention we do not agree. Defendant, an experienced businessman, knew its exact terms, the condition of the property, and the value thereof. He believed that he was getting a valuable piece of real estate at a bargain price. No obligation rested upon him to convey a one-half interest therein to plaintiff until he had been fully repaid his down payment. The accounting sought will indicate whether he has been so repaid. Defendant's eagerness to complete the purchase and his anxiety to exclude plaintiff from its terms while the latter was in the armed forces lends itself to the belief that he, rather than plaintiff, was unconscionable in his method of attempting to acquire full title to the property involved.

■ Defendant asserts that the contract is unenforceable because of the fact that plaintiff acted both as broker and purchaser in connection with the transaction. This issue was not litigated at the time of trial. Plaintiff fully disclosed to all parties involved that he had an interest in the purchase of the premises. Defendant knew this, and the correspondence indicates that Thorpe Brothers, who represented the owner, were likewise so advised. All parties understood this, and all details of plaintiff's position in the transaction were fully disclosed long prior to defendant's purchase of the premises. The rule governing such a situation is set forth in 1 Dunnell, Dig. § 198, as follows:

"* * * An agent may act for both parties if their interests do not conflict. An agent will not be allowed to serve two masters *without the intelligent consent of both.* The contract or dealings made or had by the agent, while so acting for the other party without the knowledge or consent of the principal, *are not binding upon the latter,* and, if they still remain executory, he may re-

pudiate them on that ground, or, if they have been executed in whole or in part, he may, by acting promptly before the rights of innocent third parties have intervened, restore the consideration received, rescind the contract, and recover back the property or rights with which he has parted under it." (Italics supplied.) See, Diedrick v. Helm, 217 Minn. 483, 484, 14 N. W. (2d) 913, 915, 153 A. L. R. 649.

From this it is clear that, at the most, an agreement of this kind is merely voidable at the election of a principal to whom the dual capacity has not been disclosed. Since such a situation is not present here, defendant's contention in this respect must fall.

■ Defendant asserts that there was no consideration to sustain the agreement. This is clearly contrary to well-established principles governing consideration. Consideration necessary to sustain an agreement of this kind need only be something of value or of a nature that may inure to the benefit of the party. Here, not only did plaintiff agree to assign all his commission to defendant, but he was instrumental in disclosing to defendant the fact that the premises could be purchased at substantially less than what they regarded as the fair value thereof. Defendant was to be completely reimbursed for all sums he had invested in the premises before plaintiff was entitled to any part thereof. Such consideration adequately supported the agreement. See, 2 Dunnell, Dig. & Supp. § 1750, and cases cited.

■ Plaintiff seeks specific performance of the agreement. Since the agreement is clear and definite and founded upon a good consideration, we find no reason why he should not be entitled to the relief prayed for. Likewise, we see no reason why he should not be entitled to the accounting sought, nor why defendant should be permitted to escape the obligations of his agreement while retaining the benefits thereof. The court found and determined that plaintiff represented that the commission would be about $1,500. It found as untrue the other contentions made by defendant that plaintiff was to pay one-half the down payment. No demand was ever made upon plaintiff for the difference between the $600

tendered and the $1,500 found by the court. The only demand made was that plaintiff step out of the agreement altogether and permit defendant to go ahead, relieved of all obligations to plaintiff thereunder. It would seem that justice requires that plaintiff be given the opportunity of complying with the agreement either as it was expressed, or, at most, as the court found and determined defendant understood it to be. We are of the opinion that $600 should be the full amount required of plaintiff under the evidence. However, the trial court found that the amount defendant was led to expect was about $1,500. Plaintiff has offered to pay this sum if specific performance be granted. In this he is more than fair. In 5 Dunnell, Dig. & Supp. § 8813, where the rules governing actions for specific performance are set forth, it is stated:

"The court has the power and it is its duty to determine all the rights pertaining to the controversy and to administer full relief, and for this purpose it may hold the case open. *It may grant relief on such terms as will work complete justice between the parties.* In an action on a contract to convey the court should find the amount due on the contract. *It should also fix a reasonable time within which the money must be paid and provide that in case of the vendor's default his interest in the land shall end."* (Italics supplied.)

As specifically stated in Baker v. Polydisky, 144 Minn. 72, 77, 174 N. W. 526, 528:

"Although plaintiff is not entitled to specific performance of the contract according to its terms, we think he is entitled, *at his election, to take performance of the contract as it was understood by defendants.* In other words, he may, at his option, adopt defendants' version of their agreement with him and have its specific performance decreed in accordance with defendants' understanding." (Italics supplied.)

In Restatement, Contracts, certain principles are set forth as follows:

§ 374(2) "Specific enforcement will not be refused by reason of provisions in the contract which make the duty of performance depend upon conditions, precedent or subsequent, of such a nature that refusal of a decree will effectuate an unjust penalty or forfeiture, and if substantial performance of the agreed exchange is assured as required by the rule stated in § 373."

§ 375(2) "Specific enforcement may properly be decreed, in spite of a minor breach or innocent misrepresentation by the plaintiff, involving no substantial failure of the exchange for the performance to be compelled."

See, also, Fry, Specific Performance (6 ed.) §§ 767-773; Pomeroy, Specific Performance of Contracts (3 ed.) § 252; Kies v. Warrick, 149 Minn. 177, 182 N. W. 998; Park v. Johnson, 4 Allen (86 Mass.) 259; Anderson v. Kennedy, 51 Mich. 467, 16 N. W. 816.

Under the foregoing authorities, it is our opinion that defendant be compelled to furnish an accounting of the receipts and expenditures on the premises involved, and that, if such accounting discloses that he has been repaid his down payment, he thereafter pay to plaintiff an undivided one-half of any profits derived from the property and convey and transfer to plaintiff an undivided one-half interest therein and to the furniture upon payment by plaintiff to him of the sum of $1,500, said conveyance and transfer to be subject to a proportionate share of any unpaid financing obligations set forth in defendant's agreement for the purchase of the premises; or, in the alternative, if such accounting establishes that defendant has not been repaid his down payment from the rentals derived from said premises, that the decree of specific performance be subject to repayment of defendant's down payment as well as to the other obligations above set forth.

Reversed and remanded with directions to proceed in accordance with this opinion.

Mr. Justice Youngdahl and Mr. Justice Matson took no part in the consideration or decision of this case.